UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| WENDY GRASSO and NICHOLAS GRASSO, on behalf of themselves and all others similarly situated, | CIVIL ACTION NO. |
| Plaintiffs, | |
| versus | |
| ELECTROLUX HOME PRODUCTS, INC., | |
| Defendant. | |

## NOTICE OF REMOVAL OF DEFENDANT
## ELECTROLUX HOME PRODUCTS, INC.

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, defendant Electrolux Home Products, Inc. ("Electrolux") hereby removes the above-captioned case from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to the United States District Court for the Southern District of Florida, and states as follows:

1. On or about January 2, 2015, plaintiffs commenced this action against Electrolux by filing a class action Complaint in the Circuit Court of Miami-Dade County, in the State of Florida, bearing case number 15000058CA01.

2. Plaintiffs allege that they purchased a Frigidaire front-load washer for approximately $570 in January 2010. (Compl. ¶ 14.) Plaintiffs allege that about two years later, they began to notice odors in their clothing after it had been washed and that about three months after that, they "discovered black streaks on garments and towels removed from that machine." (*Id.* ¶ 14.)

3. In their Complaint, plaintiffs purport to represent "[a]ll persons and entities who purchased Electrolux Washing Machines primarily for personal, family, or household purposes, and not for resale, in the state of Florida." (*Id.* ¶ 20.) Plaintiffs do not limit the class definition to a specific time period.

4. Electrolux was served on January 26, 2015.

5. As set forth more fully below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, and Electrolux has satisfied the procedural requirements for removal.

## I.   REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT.

4. This case is subject to removal pursuant to the Class Action Fairness Act ("CAFA").

5. As set forth below, this is a putative class action in which: (1) there are 100 or more members in plaintiffs' proposed class; (2) there is minimal diversity of citizenship; and (3) the claims of the proposed class members exceed the sum or value of $5,000,000 in the aggregate. Thus, this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

### A.   Class Action Consisting Of More Than 100 Members

6. Plaintiffs allege that "[t]he members of the Class are so numerous that joinder of all members would be impracticable." (*Id.* ¶ 23.) Plaintiffs further allege that "[t]he proposed Class includes thousands of members." (*Id.*)

7. Thus, it is evident that the number of class members in plaintiffs' proposed class is greater than 100 for purposes of 28 U.S.C. § 1332(d)(5)(B).

### B. Minimal Diversity Of Citizenship

8. According to plaintiffs' Complaint, the members of the putative class are citizens of the state of Florida. (*See, e.g.*, Compl. ¶ 14.)

9. Electrolux is, and was at the time plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in North Carolina, and, therefore, is a citizen of the States of Delaware and North Carolina for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

10. Thus, at least one proposed class member and one defendant are diverse. *See* 28 U.S.C. § 1332(d)(2)(A) (defining diversity of citizenship under CAFA as including situations where "any member of a class of plaintiffs is a citizen of a State different from any defendant").

### C. The Amount-In-Controversy Requirement Is Satisfied.

11. The claims of individual class members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6).

12. Plaintiffs in this case allege that Electrolux's front-load washing machines "includ[e] serious design defects that cause the Washing Machines to (a) accumulate mold and mildew . . . within the Washing Machines [and] (b) produce a mold or mildew odor that can permeate a consumer's home . . . ." (Compl. ¶ 2.) Plaintiffs allege causes of action for breach of express and implied warranties, and for declaratory relief. (*See generally* Compl.)

13. Plaintiffs seek "actual and/or compensatory damages . . . including the replacement and/or recall of the defective Washing Machines[.]" (*Id.* ¶ 11.) Plaintiffs also seek reasonable attorneys' fees and costs. (*Id.*; *see also id.*, Prayer for Relief.)

14. It is clear that plaintiffs do not intend to limit their proposed class to consumers who purchased their machines within the five- or four-year limitations periods for warranty

3

claims under Florida law. *See* Fla. Stat. § 95.11(2)(b) (five-year limitations period for express-warranty claims); *id.* § 95.11(3)(k) (four-year limitations period for implied-warranty claims). Notwithstanding their reference to a "Class Period" (Compl. ¶ 48), plaintiffs do not actually define a limited class period in the class definition (*see id.* ¶ 20). In addition, plaintiffs devote a substantial portion of their Complaint to allegations related to tolling of the statute of limitations, asserting that the "statute of limitations has been tolled by Electrolux's knowing and active concealment of the fact that the Washing Machines contain a defect which causes mold, mildew and biofilm to grow inside of the Machines." (*Id.* ¶ 53.)[1]

15.   The Supreme Court recently clarified that a notice of removal "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 551 (2014). Nonetheless, Electrolux has submitted a declaration in support of its notice. (*See* Decl. of Shawn Hayes ("Hayes Decl."), Feb. 23, 2015 (attached as Ex. 1).) As set forth more fully below and in the Hayes Declaration, plaintiffs' claims meet the jurisdictional threshold.

16.   The cost of replacing and/or recalling front-load washing machines for the entire class would far surpass the $5 million amount-in-controversy requirement. Courts routinely rely on declarations from a manufacturer attesting to the value of a product and the number of products sold to the putative class to determine whether the amount-in-controversy requirement is met where plaintiffs seek classwide replacement of, or damages for, a purportedly defective product. *See, e.g.*, *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) (reversing remand order under CAFA because, *inter alia*, "defendant Pfizer produced an affidavit stating

---

[1]   Defendant does not accept as true any of these allegations in the Complaint, including those pertaining to tolling of the statute of limitations, but assumes they are valid for purposes of removal. *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1241 (11th Cir. 2013) ("When determining the amount in controversy, we do not consider whether some damages claimed by the plaintiff might be precluded by a statute of limitations.").

that sales from the relevant Advil products were over $14 million" and "defendants Johnson & Johnson and McNeil-PPC produced an affidavit stating their total sales of Tylenol Cold Multi-Symptom as $3.3 million"); *Deaton v. Frito-Lay N. Am., Inc.*, No. 1:12-CV-01029, 2013 U.S. Dist. LEXIS 78927, at *6 (W.D. Ark. June 5, 2013) (amount-in-controversy requirement satisfied based on affidavit stating that Frito-Lay's total sales of products exceeded $5 million because "a fact-finder could easily conclude that Frito-Lay's supplier/retailer sales of over $5 million for both 2010 and 2011 translated to over $5 million in individual consumer sales during the same period"); *De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 U.S. Dist. LEXIS 36679, at *14-17 (N.D. Ill. Mar. 18, 2013) (finding jurisdictional threshold met where affidavit identified the number of shoes sold to consumers and retailers with an Illinois address and then multiplied that number by the applicable price); *Ezell v. Graco Children's Prods., Inc.*, No. CIV-12-787-C, 2012 U.S. Dist. LEXIS 136386, at *3 (W.D. Okla. Sept. 24, 2012) (defendants' affidavit detailing calculation of number of booster seats sold by average price of two models was sufficient to show that amount in controversy exceeded $5 million); *see also, e.g., Kotsur v. Goodman Global, Inc.*, No. 14-1147, 2014 WL 6388432, at *4 (E.D. Pa. Nov. 17, 2014) (finding *sua sponte* that CAFA jurisdiction existed in case involving allegedly defective air conditioning units, multiplying $2,000 in repairs and replacement costs by 390,000 putative class members, which yielded an amount in controversy greater than $5 million); *Walker v. Old Reliable Cas. Co.*, No. 4:13-CV-04122, 2014 WL 6872903, at *2 (W.D. Ark. Dec. 4, 2014) (even though defendant's estimate of $7.5 million might ultimately be proven overly inclusive, its affidavit provided sufficient factual evidence from which a reasonable fact finder could conclude that the amount in controversy exceeded $5 million).[2]

---

[2] *Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006), a product-liability case seeking

*(cont'd)*

17. As set forth in Mr. Hayes's declaration, Electrolux sold 225,067 front-load washing machines to retailers and distributors for sale and distribution in Florida between 2006 and 2015. (*See* Hayes Decl. ¶ 6.) The total estimated wholesale price paid for those washing machines by the retailers and distributors was approximately $107,954,352. (*Id.*) Even limiting the class to machines purchased since 2010 (the date of plaintiff's purchase), the total estimated wholesale price paid for washing machines sold to retailers and distributors for sale and distribution in Florida was approximately $36,706,462. (*See id.* ¶ 7.) Thus, Electrolux's records demonstrate that replacing front-load washing machines for the putative class would cost exponentially more than $5,000,000.

---

*(cont'd from previous page)*
damages for defective ovens, does not compel a different analysis. In that case, the Eleventh Circuit held that an affidavit submitted by Maytag attesting to the value of products sold was insufficient to establish CAFA jurisdiction. But in doing so, it did not reject the use of affidavits to prove the amount in controversy; to the contrary, it accepted the affidavit as relevant evidence but concluded that the particular affidavit did not set forth sufficient facts to establish the minimum amount in controversy. Specifically, the court concluded that the defendant did not justify the affidavit's assumption that the cost of the oven was the proper measure of damages in light of the complaint's request for "compensatory damages, interest, and costs" and that the reported sales of ovens in Florida were "merely a guess" based on product registrations. *Id.* at 1332; *cf. also, e.g., Dudley v. Eli Lilly & Co.*, No. 14-13048, 2014 WL 7360016, at *6-7 (11th Cir. Dec. 29, 2014) (concluding that affidavit was insufficient to prove amount in controversy because it depended on unsupported assumptions about the extent of "incentive compensation" sought by the plaintiff). The facts here are different. The declaration relies on wholesale costs of washers because **plaintiffs expressly seek damages up to and including replacement of the machines**. (Compl. ¶ 11.) As courts have held in other cases, full value is an appropriate measure of the amount in controversy where, as here, it is clear on the face of the complaint that the plaintiff is not seeking less than full value. *See McPeters v. LexisNexis*, No. H-11-2056, 2011 WL 2434088, at *2 & n.2 (S.D Tex. June 10, 2011) (jurisdictional threshold was satisfied where LexisNexis derived a $7 million amount from the allegations on the "face of the complaint," which made clear that the plaintiffs were seeking "the entirety of [the] fees charged by LexisNexis to the plaintiff class" instead of, as in *Miedema*, "only a subset of . . . revenue in damages"). Moreover, the numbers of washers sold here are based on actual, not estimated, sales to wholesalers and distributors for sale and distribution in Florida. (*See* Hayes Decl. ¶ 6.) Finally, *Miedema* was decided years before *Dart Cherokee* and relied on a supposed presumption against CAFA removal that is now moribund. *See Miedema*, 450 F.3d at 1328 ("The rule of construing removal statutes strictly and resolving doubts in favor of remand, however, is well-established."). As the Supreme Court recently made clear, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to *facilitate* adjudication of certain class actions in federal court." *Dart Cherokee*, 135 S. Ct. at 554 (emphasis added); *see also Dudley*, 2014 WL 7360016, at *2 (recognizing that *Miedema's* presumption
*(cont'd)*

18. For these reasons, the amount-in-controversy requirement is easily satisfied.

## II. ELECTROLUX HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

19. Electrolux was served on January 26, 2015. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

20. The Circuit Court of Miami-Dade County is located within the Southern District of Florida. Therefore, venue is proper pursuant to 28 U.S.C. § 89(c) because it is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

21. No previous application has been made for the relief requested herein.

22. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders served upon Electrolux, which papers include the summons and Complaint, is attached hereto as Exhibit 2. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for plaintiffs and a copy is being filed with the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

WHEREFORE, Electrolux respectfully removes this action from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida bearing Case No. 15000058CA01, to this Court pursuant to 28 U.S.C. § 1441.

---

*(cont'd from previous page)*
against CAFA removal is no longer good law in light of *Dart Cherokee*). Accordingly, *Miedema* does not defeat removal.

Dated: February 24, 2015

Respectfully submitted,

/s/ R. Craig Mayfield
R. Craig Mayfield (FBN 429643)
cmayfield@hwhlaw.com
Joshua C. Webb (FBN 051679)
jwebb@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Boulevard, Suite 3700
Tampa, FL 33602
Telephone: 813-221-3900
Facsimile: 813-221-2900

*Attorneys for Defendant*
*Electrolux Home Products, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of February, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, and that a copy of the foregoing is being furnished by e-mail to **John A. Yanchunis**, *(counsel for Plaintiffs)*, at jyanchunis@forthepeople.com, and jcabezas@forthepeople.com.

/s/ R. Craig Mayfield
R. Craig Mayfield
*Counsel for Electrolux Home Products, Inc.*