**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| WENDY and NICHOLAS GRASSO, on behalf of themselves and all others Similarly situated, | Case No.: 8:16-cv-00911-CEH-TGW |
| Plaintiffs, | CLASS ACTION |
| v. | <u>DEMAND FOR JURY TRIAL</u> |
| ELECTROLUX HOME PRODUCTS, INC. | |
| Defendant. | |

<u>**FIRST AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiffs Wendy and Nicholas Grasso ("Plaintiffs"), through their attorneys, and on behalf of themselves and all others similarly situated, allege the following facts and claims upon personal knowledge as to matters relating to themselves, and as to all other matters upon information and belief, as follows:

**NATURE OF THE CASE**

1.     Plaintiffs bring this class action individually and on behalf of the Class defined herein (the "Class") against Electrolux Home Products, Inc.  ("Electrolux" or "Defendant"), to obtain, inter alia, damages and injunctive relief for the proposed Class, as defined below.

2.     As alleged and explained more fully below, this action is brought to remedy violations of applicable law in connection with Electrolux's marketing, advertising, sale, and servicing of any new and previously unused high-efficiency front-load washing machines manufactured by Electrolux (including 3.1, 3.5, and 4+ platforms) and sold under the Electrolux, Frigidaire, Crosley, White-Westinghouse, or Kenmore brand names ("Washing Machines" or "Machines").  Electrolux has knowingly concealed material facts regarding the Washing

Machines, including serious design defects that cause the Washing Machines to (a) accumulate mold and mildew (also known as "biofilm"[1]) within the Washing Machines, (b) produce a mold or mildew odor that can permeate a consumer's home, (c) produce a mold or mildew odor on clothes washed in the Machines, and (d) be unusable in the manner, to the extent and for the purpose for which the Washing Machines were advertised, marketed and sold as a result of the mold and mildew accumulation and odor problems described above.

3.      The Washing Machines are defective in several respects that cause them to accumulate mold and mildew.  These defects include without limitation: (a) the failure of the Washing Machines to drain properly and to eliminate moisture following wash cycles; (b) the failure of the Washing Machines to rinse away and remove dirt, detergent, fabric softeners and oils that accumulate and  contribute to the formation of mold and mildew; (c) the failure of the Washing Machines to prevent the accumulation of residues that contribute to the formation of mold and mildew; and (d) the failure of the Washing Machines to clean themselves in a manner necessary for the proper functioning of the Machines for the purpose for which they are intended; and (e) the failure of the Washing Machines to have features allowing consumers to adequately clean and service the Machines where dirt, detergent, fabric softeners, oils, molds, and mildews can develop.

4.      The mold and mildew problems in the Washing Machines create a genuine nuisance.  In addition to being unsightly and noxious, mold and mildew on the inside of a washing machine can damage clothes and other items.  Furthermore, the development of mold and mildew in a consumer's washing machine can lead to a host of health problems, including

---

[1] Biofilm is defined as "a thin usually resistant layer of microorganisms (as bacteria) that form on and coat various surfaces." *See,* Merriam-Webster, Definition of "Biofilm," http://www.merriam-webster.com/dictionary/biofilm.

allergies and complications due to asthma.  Needless to say, the mold and mildew problems also substantially decrease the value of these Washing Machines.

5.      Upon information and belief, Electrolux knew and was aware, prior to marketing and selling the Washing Machines, that the Machines were inherently defective in that they were substantially likely to cease working in the manner that they were intended to perform during their useful life with normal use.   Electrolux was in the exclusive possession of this information, which was material to Plaintiffs and class members, and Electrolux had a duty, under all circumstances, to disclose the defect to Plaintiffs and class members.  Nevertheless, Electrolux has failed and refused to warn its customers of the serious common defects inherent in the Washing Machines or to warn its customers of the common problems that they will likely encounter when the Machines begin to accumulate mold as a result of the Machines' defects.

6.      Electrolux also has refused, and continues to refuse, to provide a remedy to consumers.  Instead, only upon receipt of complaints (and after a consumer's purchase), Electrolux instructs consumers that they must wipe the inside steel basket of their Machines after each wash cycle to avoid mold and mildew problems, purchase cleaning agents, which mask the odor of the biofilm, and to leave the Machines' doors open when not in use.  However, leaving a Machine's door open is unsafe, as Electrolux explicitly warns consumers *not* to leave the machine door open around small children.

7.      As a result of the design defects that afflict the Washing Machines, Plaintiffs and other class members have overpaid for the Machines because the value of the Machines was diminished at the time they were sold to consumers.  In addition, consumers would not have purchased the Washing Machines had Electrolux informed them of the common defects at the time of sale.  Plaintiffs and the class members have consequently suffered economic damages.

8.      In addition, as a result of the mold or mildew odor that permeates many clothes and other items that are placed in the Machines, consumers have been forced to replace clothes, towels and other items that have been damaged by the defects in these Washing Machines.

9.      Electrolux has profited, directly or indirectly, by concealing the nature of the defects because, by misrepresenting or concealing its knowledge regarding the defects at issue and the cause of the problems associated with the defects to consumers, Electrolux has been able to convince a large number of consumers to purchase the Washing Machines and to pay Electrolux, or its authorized service representatives (from which Electrolux earns a profit), to address the problems arising from the known defect.

10.     Electrolux's actions in selling the Washing Machines without disclosing common material defects, and in failing to issue a recall or otherwise promptly taking appropriate corrective action to repair and/or replace the Washing Machines with this known defect were negligent, reckless, violated state laws, and were in breach of its statutory and common law duties, and express and implied warranties to its customers.  Those actions were a proximate cause of injury to the Plaintiffs and the class members.

11.     Plaintiffs seek actual and/or compensatory damages, as well as equitable relief, including the replacement and/or recall of the defective Washing Machines, costs and expenses of litigation, reasonable attorneys' fees, and all other expenses permitted by applicable law, and declaratory relief via a court order that these machines are defective and unfit for use.

## JURISDICTION AND VENUE

12.     Venue and jurisdiction are proper within this Court, as the matters in dispute are in excess of the requisite jurisdictional amount, and Electrolux engages in substantial business within this district, including the sale and distribution of the Washing Machines from distribution centers located in this district to consumers who are in the class sought to be certified.

13.    All conditions precedent were performed by Plaintiffs, have occurred, or were waived by Electrolux.

## PARTIES

### The Plaintiffs

14.    Plaintiffs Nicholas and Wendy Grasso ("the Grassos") are residents of the state of Florida.  In or about January 2010, the Grassos purchased an Electrolux-manufactured Frigidaire Washing Machine, Model Number at FAFW3511KW0 for approximately $570 from HH Gregg in Florida.  In February 2012, the Grassos began to notice noxious odors on their clothing after it had been washed, but did not realize that the odors were caused by biofilm that had developed in their Frigidaire washing machine.  The Grassos then discovered black streaks on garments and towels removed from the machine in or around May 2012.  The Grassos then discovered mold and mildew deposits around the steel drum inside the machine, along with the noxious odor.  The Grassos have purchased numerous cleaning products to rid the machine of the mold, mildew, and odor problems, all to no avail, and several of their garments have been ruined by the biofilm.

15.    The Grassos have contacted Electrolux on numerous occasions to complain about the mold and mildew problems.  In late February 2012, Ms. Grasso wrote to Electrolux to complain about the smell from her washing machine.  Electrolux wrote to Ms. Grasso on March 5, 2012, stating that Electrolux uses "some of the finest quality materials available and sophisticated assembly processes to assure manufacturing accuracy."  Electrolux also informed Ms. Grasso that leaving the door of the machine open and wiping around the gasket would "prevent any [biofilm] build-up."  Electrolux refused to cover the replacement of Ms. Grasso's machine, and stated that "mold is not covered under the manufacture" warranty.

16.     Electrolux's solution has not solved anything.  Although Electrolux informed Ms. Grasso that wiping down the gasket and leaving the door of her machine open would "prevent any [biofilm] build-up," that is not the case—Ms. Grasso's machine continued to accumulate mold, mildew, and biofilm despite following Electrolux's instructions.  Despite Electrolux's assurances to the contrary, the biofilm build-up was not caused by Ms. Grasso's use of the machine, but by the machine's inherently defective design.

17.     In fact, because the Grassos have had to leave the door of their machine open, the plastic around the door began to crack.  Ms. Grasso wrote to Electrolux on May 31, 2012, to inform the company of that defect, as well.  After that letter, an Electrolux employee named Crystal called Ms. Grasso to inform her that Electrolux would not be replacing her machine nor covering the cost to repair it.

18.     Due to the noxious odor and biofilm problems, which were not solved by any of Electrolux's proposed solutions but instead caused by the machine's inherently defective design, Ms. Grasso had to drive to her mother-in-law's home to do the family's laundry.

### The Defendant

19.     Defendant Electrolux Home Products, Inc. ("Electrolux") is a Delaware corporation with its principal place of business at 10200 David Taylor Dr., Charlotte, North Carolina 28262.  Upon information and belief, at all times relevant, Electrolux was engaged in the business of designing, manufacturing, and distributing washing machines throughout the United States, including the state of Florida.

### CLASS ACTION ALLEGATIONS

20.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3). The Nationwide Class (the "Class") that Plaintiffs seek to represent is defined as follows:

6

> All individual consumers who between January 1, 2004 and December 31, 2011, purchased[2] a Washing Machine in the United States.

21.     Plaintiffs also bring this action on behalf of Sub-Classes, one for each State of the United States and one for the territories of the United States, to the extent appropriate, in the alternative to the claims asserted on behalf of the Class:

> All Class members who between January 1, 2004 and December 31, 2011, purchased a Washing Machine, not for resale, in the State of [State Name]/Territories of the United States ("[State Name]/Territories Class").

22.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

23.     Specifically excluded from the Class are the Defendant, its officers, directors, agents, its corporate parent, or entities controlled by Electrolux, and its successors or assigns, the Judge assigned to this action, and any member of the Judge's immediate family.

24.     <u>Numerosity</u>.   The members of the Class are so numerous that joinder of all members would be impracticable.   The proposed Class includes thousands of members. Although the exact number and identity of class members is not presently known, they can be identified through the review of records in Electrolux's possession, custody and control.

25.     <u>Commonality and Predominance</u>.  There are numerous questions of fact and law common to the members of the Class that predominate over individual questions affecting any individual members, including but not limited to:

> a.   whether the Washing Machines possess common defects;

---

[2] "Purchased" shall include the acquisition of a Washing Machine (i) by payment of consideration for said Washing Machine, (ii) as part of the purchase or remodeling of a home, or (iii) by receiving a Washing Machine as a gift prior to its first use.

b.  whether Electrolux was aware that the Washing Machines were and are defective;

c.  whether Electrolux concealed the fact that the Washing Machines were and are defective;

d.  whether Electrolux omitted and concealed material facts from its communications and disclosures to Plaintiffs and class members regarding the defects inherent in the Washing Machines;

e.  whether Electrolux was obligated to disclose that the Washing Machines suffer common defects;

f.  whether Electrolux breached its express warranties, and whether the limitations on those express warranties are unconscionable and unenforceable;

g.  whether Electrolux breached its implied warranties;

h.  whether Electrolux engaged in unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in connection with the sale of the Washing Machines;

i.  whether Electrolux has been unjustly enriched from the sale of its Washing Machines; and

j.  whether Plaintiffs and members of the Class are entitled to recover damages and, if so, the appropriate amount of those damages.

26.     Electrolux's defenses, to the extent that any such defenses apply, are applicable generally to Plaintiffs and the entire Class and are not distinguishable as to proposed class members.

27.    <u>Typicality</u>.   The claims of the Plaintiffs herein are typical of the claims of the class members as a whole, all of whom have sustained and/or will sustain damages, including irreparable harm, as a proximate or legal result of the common course of conduct of Electrolux as complained of in this class action complaint.  The claims of the Plaintiffs are typical of the Class because Electrolux subjected all class members to the same course of conduct.

28.    <u>Adequacy</u>.   Plaintiffs, on behalf of themselves, and all others similarly situated, will fairly and adequately protect the interests of all members of the Class, and have retained attorneys highly experienced in the prosecution of complex consumer class action litigation. Neither Plaintiffs nor their attorneys have any interests which are antagonistic to the Class.

29.    <u>Superiority</u>.   A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable.   While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each class member resulting from Electrolux's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual class members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.   A class action in this matter will avoid case management

difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

30.     Further, without class certification, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the proposed Class that would establish incompatible standards of conduct for Electrolux.  Electrolux has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

31.     Notice of a certified class action and of any result or resolution of the litigation can be provided to class members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

32.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

## FACTUAL ALLEGATIONS

33.     Electrolux holds itself out to the public as a manufacturer of stylish, cutting-edge, and easy-to-use home appliances, including washing machines for which it claims to be the world's largest manufacturer of front load washers and dryers.  Electrolux advertises that its "exclusive technology gets your clothes cleaner than any other washer."[3]

34.     Electrolux has manufactured, produced, and/or distributed front load washing machines for several leading retailers throughout the United States, including Lowes, Sears, Best Buy, HH Gregg, and other major retailers.

---

[3]    Electrolux   Laundry   Appliances,   http://www.electroluxappliances.com/laundry-appliances/washers.

35.     Electrolux manufactures thousands of washing machines each year, a substantial portion of which are sold or offered for sale in Florida.  Electrolux has sold, either directly or indirectly, hundreds of its Washing Machines in the State of Florida and thousands more throughout the United States.

36.     In conjunction with each sale, Electrolux marketed, advertised and warranted that its Washing Machines were fit for the ordinary purpose for which such goods were used and were free from defects, or at a minimum would clean Plaintiffs' and class members' clothes— not accumulate mold, mildew, and emit associated odors.  In addition, Electrolux expressly warranted that the stainless steel inner wash basket is free from a defect in materials or workmanship, or it would be replaced.

37.     Electrolux manufactured and distributed its Washing Machines intending that consumers would purchase them, regardless of the place of purchase or the location in which customers would use them.  The Washing Machines were placed into the stream of commerce and were distributed, offered for sale and sold to Plaintiffs, class members, and other purchasers throughout the United States.

38.     The Washing Machines are defective in several respects that cause them to accumulate mold and mildew.  These defects include without limitation: (a) the failure of the Washing Machines to drain properly and to eliminate moisture following wash cycles; (b) the failure of the Washing Machines to rinse away and remove dirt, detergent, fabric softeners and oils that accumulate and  contribute to the formation of mold and mildew; (c) the failure of the Washing Machines to prevent the accumulation of residues that contribute to the formation of mold and mildew; and (d) the failure of the Washing Machines to clean themselves in a manner necessary for the proper functioning of the Machines for the purpose for which they are intended.

39.     Electrolux is aware of the common defects that create the mold and mildew problems and has been aware of these problems since at least the year 2000.  Plaintiffs and many members of the Class have alerted Electrolux by complaining to Electrolux directly and/or to Electrolux's authorized dealerships and service persons.

40.     Electrolux is fully cognizant and aware of its Machines' defect, which is known by Electrolux to be common and widespread.

41.     Consumers who experience the Machines' defects and contact Electrolux are given the same uniform instructions to deal with the defects, but which do not resolve any of the problems associated with the defect: wipe down the Washing Machine's basket, and leave the door open between cycles.  Electrolux gives this instruction, despite its own warnings that consumers should *not* leave the door of its Washing Machines open due to safety concerns.

42.     Following Electrolux's instructions to leave the Machines' doors open and regularly wipe down the Washing Machines' baskets do not address the defects inherent in the Machines: that its design allows mold and mildew to easily form, no matter how the consumer uses the machine.

43.     In addition to the countless hours spent by consumers to follow Electrolux's instructions, endless frustration, damaged clothing, and costs associated with attempted repairs, consumers have spent substantial sums on cleaning products in attempt to rid their Machines of mold, mildew and associated odor.  Yet, Electrolux continues to deny the existence of the pervasive mold and mildew problem to consumers, or reimburse for any of these costs.  Electrolux has sat silent while consumers purchased and continue to purchase the defective Machines, or has otherwise blamed the consumer for not following its bogus instructions.

44.     The Washing Machines purchased by Plaintiffs and the Class have failed to work properly due to a defect in design, and not resulting from the ordinary course of usage (or even foreseeable misuse) by Plaintiffs or class members.

45.     Electrolux failed to adequately design and/or test the Washing Machines to ensure that they were and are free from defects.  Before front-loading Washing Machines entered the market, Electrolux knew, or was reckless in not knowing, that they (a) contained inherent, common defects; and (b) were not of merchantable quality or fit for their ordinary purpose.

46.     Plaintiffs now must leave the door of their Washing Machine open at all times when not in use, and dry out the washer after every use with a towel to attempt to avoid water-build up and further accumulation of mold and odor.  Plaintiffs must also secure entry into their entire laundry room to prevent a musty smell from permeating their home, and to avoid the obvious dangers that a constantly-open washer door present to young children.   Despite following these instructions from Electrolux, the biofilm problem continues to persist due to the common defects.

47.     Electrolux's instruction to leave its Washing Machine doors open, virtually at all times, to avoid mold and mildew problems is even more startling, given Electrolux's safety precaution in its Owner's Guide (obtained by consumers post-purchase) to not leave the door open as it could be harmful to pets and small children.

48.     The problems encountered by Plaintiffs were common, widespread, and warrant class treatment.

**TOLLING**

49.     Throughout the Class Period, Electrolux affirmatively concealed from Plaintiffs and class members the defects described herein.

50.     Electrolux had a duty to inform Plaintiffs and the Class of the defects described herein, which it knew or should have known.   Notwithstanding its duty, Electrolux never disclosed the defects to Plaintiffs of the Class; rather, Electrolux attributed resulting biofilm growth to misuse, failure to wipe down the interior of the washing machine basket, detergent used, temperature of water, and other issues having no bearing on the defect.

51.     Despite exercising reasonable diligence, Plaintiffs and class members could not have discovered the defects or Electrolux's scheme to avoid disclosure of the defects.

52.     In fact, when Plaintiffs and class members would complain to Electrolux, Electrolux would deny any problems or defects inherent in the machines, and instead inform consumers that biofilm build-up would be prevented by wiping down the machines' gaskets and leaving the machines' doors open.   Neither "solution" actually addresses the defects, which the consumers discover *after* repeated contacts with Electrolux.

53.     Plaintiffs' claims accrued upon discovery that the Washing Machines contained mold, mildew, and biofilm problems, indicating that the Washing Machines have design defects. Because Electrolux concealed the fact that the Machines contain design defects which cause mold, mildew, and biofilm problems, Plaintiffs did not discover and could not have discovered this fact through reasonable and diligent investigation until after they experienced mold, mildew, and biofilm problems, could reasonably exclude other potential causes of the problems, and discovered that their Machines contained the symptoms of the defects.

54.     The statute of limitations has been tolled by Electrolux's knowing and active concealment of the fact that the Washing Machines contain defects which causes mold, mildew, and biofilm to grow inside of the Machines.   Electrolux knew of the defects, but failed to disclose this vital information essential to Plaintiffs' pursuit of their claims, without any fault or

14

lack of diligence on behalf of the Plaintiffs. Plaintiffs could not have reasonably discovered that their Washing Machines contain design defects which led to the biofilm growth.

55.     Electrolux was and is under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of the Washing Machines. At all relevant times, and continuing to this day, Electrolux knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Washing Machines. Plaintiffs reasonably relied upon Electrolux's affirmative misrepresentations and knowing, affirmative, and/or active concealment. Based on the foregoing, Electrolux is estopped from relying on any statutes of limitations in defense of this action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
Breach of Express Warranty
(Asserted by Plaintiffs, Individually, and on Behalf of the Class and/or the State Classes)

56.     Plaintiffs incorporate by reference each of the preceding allegations as if fully set forth herein.

57.     Electrolux provided Plaintiffs and class members with express warranties, as detailed more fully herein.

58.     Plaintiffs provided Electrolux with notice of its breach of express warranties within a reasonable time after discovering that breach. Upon informing Electrolux of the Washing Machines' defects, Electrolux warned Plaintiffs that they would have mold and mildew problems with their machines if they did not wipe the inside of their machines with a towel after every wash cycle and if they did not leave their washer doors open when not in use (despite their warnings to the contrary). Electrolux did not provide any parts or service that correct the mold and mildew problem, as required by Electrolux's warranty.

59.     As a direct and proximate result of the breach of said warranties, Plaintiffs and the class members have been injured and are therefore entitled to damages.  Electrolux's failure to repair or replace Plaintiffs' machines has caused the warranty to fail of its essential purpose, as a result of which Plaintiffs and the class members are entitled to damages flowing from the breach of express warranty.

60.     Alternatively, Plaintiffs seek to recover for Electrolux's breach of express warranty under the substantially similar laws of the states of purchase.

### SECOND CAUSE OF ACTION
Breach of Implied Warranty of Merchantability
(Asserted by Plaintiffs, Individually, and on Behalf of the Class and/or the State Classes)

61.     Plaintiffs incorporate by reference each of the preceding allegations as if fully set forth herein.

62.     As a manufacturer, distributor, and/or seller of its Washing Machines, Electrolux is a "merchant."

63.     The Washing Machines are "goods."

64.     Implied in every sale of the Washing Machines is a warranty of merchantability that requires, *inter alia*, that the Washing Machines pass without objection in the trade and are fit for the ordinary purposes for which Washing Machines are used.

65.     Electrolux impliedly represented and warranted that the Washing Machines were fit for the ordinary purposes for which such goods are used, *i.e.*, cleaning clothes.

66.     Electrolux breached this implied warranty because the Washing Machines possess design defects that lead to mold and mildew problems, which substantially reduced and/or prevented the Washing Machines from cleaning clothes properly.

67.     All of the Washing Machines were manufactured and distributed with the design defects that lead to common mold and mildew problems and were, therefore, not of merchantable quality at the time that they were distributed into the stream of commerce by Electrolux.

68.     Consumers were not in a position to negotiate the terms limiting any implied warranties offered at the point of sale; they were provided with written warranties on a take-it-or-leave-it basis.

69.     As a direct and proximate result of the breach of said warranties, Plaintiffs and the class members were injured and are therefore entitled to damages.

70.     Alternatively, Plaintiffs seek to recover for Electrolux's breach of implied warranty, under the substantially similar laws of the states of purchase, including Florida (F.S.A. § 672.314) and California (Song-Beverly Consumer Warranty Act, Civil Code § 1790 *et seq.*).

### THIRD CAUSE OF ACTION
Violations of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312)—Written Warranty
(Asserted by Plaintiffs, Individually, and on Behalf of the Class)

71.     Plaintiffs incorporate by reference each of the preceding allegations as if fully set forth herein.

72.      Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

73.     Plaintiffs and class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

74.     Electrolux is a "supplier" and "warrantor," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

75.     Electrolux provided Plaintiffs and class members with "written warranties," as that term is defined by 15 U.S.C. § 2301(6).

76.     In its capacity as a warrantor, and by the conduct described herein, any attempts by Electrolux to limit the express warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, other otherwise limit, liability for the defective Washing Machines is null and void.

77.     All jurisdictional prerequisites have been satisfied.

78.     By Electrolux's conduct as described herein, including Electrolux's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Electrolux has failed to comply with its obligations under their written and implied promises, warranties, and representations.

79.     As a result of Electrolux's breach of express warranties, Plaintiffs and the class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## FOURTH CAUSE OF ACTION
Violations of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312)—Implied Warranty
(Asserted by Plaintiffs, Individually, and on Behalf of the Class and/or the State Classes)

80.     Plaintiffs incorporate by reference each of the preceding allegations as if fully set forth herein.

81.     Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

82.     Plaintiffs and class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

83.     Electrolux is a "supplier" and "warrantor," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

84.     Electrolux provided Plaintiffs and class members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

18

85.    In its capacity as a warrantor, and by the conduct described herein, any attempts by Electrolux to limit the express warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, other otherwise limit, liability for the defective Washing Machines is null and void.

86.    All jurisdictional prerequisites have been satisfied.

87.    By Electrolux's conduct as described herein, including Electrolux's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Electrolux has failed to comply with its obligations under their written and implied promises, warranties, and representations.

88.    As a result of Electrolux's breach of express warranties, Plaintiffs and the class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

### FIFTH CAUSE OF ACTION
Injunctive and Declaratory Relief
(Asserted by Plaintiffs, Individually, and on Behalf of the Class)

89.    Plaintiffs incorporate by reference each of the preceding allegations as if fully set forth herein.

90.    There is an actual controversy between Electrolux and Plaintiffs concerning the existence of material defects in the Washing Machines.

91.    Accordingly, Plaintiffs and the Class seek a declaration that the Washing Machines contain common defects in their design and manufacture that will cause the Machines to develop biofilm during the useful lives of the products.

92.    Electrolux designed, manufactured, produced, tested, inspected, marketed, distributed, and sold Washing Machines which contain material defects as described herein. Based upon information and belief, Electrolux continues to design, manufacture, produce, test,

inspect, market, distribute, and sell Washing Machines which contain material defects as described herein.

93. Based upon information and belief, Electrolux has taken no corrective action concerning the defects described herein, and has not issued any warnings or notices concerning the defects, nor implemented a recall.

94. Plaintiffs and class members have suffered actual damage or injury or are in risk of suffering actual damage or injury due to the Electrolux machine defects. Electrolux should be required to take corrective action to prevent further injuries, including:

(a) issuing a nationwide recall of the defective Washing Machines;

(b) issuing warnings and/or notices to consumers and the classes concerning the defects; and,

(c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective Washing Machines described herein.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment
(Asserted by Plaintiffs, Individually, and on Behalf of the Class and/or the State Classes)

95. Plaintiffs incorporate by reference each of the preceding allegations as if fully set forth herein, and raise this cause of action in the alternative to Plaintiffs' warranty causes of action.

96. Electrolux caused its defective Washing Machines to be distributed in the stream of commerce with knowledge that the Machines would be purchased by consumers who possessed a reasonable expectation that the Washing Machines would be free from material defects that cause mold, mildew, and biofilm problems.

20

97.     Plaintiffs and the class members paid a premium price for the Washing Machines that Electrolux represented as being suitable for ordinary use, and merchantable, thereby conferring a tangible economic benefit upon Electrolux.

98.     Electrolux has further benefited, directly or indirectly, by avoiding the costs associated with correcting the mold and mildew problems, making repairs, and recalling the defective Washing Machines.

99.     Electrolux has and continues to retain that economic benefit at the expense of Plaintiffs and the class members.  Principles of equity and good conscience make it unjust for Electrolux to retain the benefit conferred on it by consumers for the Washing Machines, and Electrolux should be required to pay Plaintiffs and the class members for this benefit.

### SEVENTH CAUSE OF ACTION
Violation of State Consumer Protection and Unfair Trade Practices Laws
(Asserted by Plaintiffs, Individually, and on Behalf of the Class and/or the State Classes)

100.     Plaintiffs incorporate by reference each of the preceding allegations as if fully set forth herein.

101.     Electrolux has engaged in unfair, unlawful, and fraudulent business practices by: (1) marketing and selling the Washing Machines with design defects that cause common mold and mildew problems with normal use and/or create a substantial risk that such problems would occur with normal use; and (2) intentionally failing to disclose and/or conceal these known defects and risks.

102.     Electrolux intentionally concealed and/or failed to disclose that the Washing Machines have design defects, and that the design defects cause common mold and mildew problems, for the purpose of inducing Plaintiffs and other class members to purchase the machines.

103.     The facts concealed and/or not disclosed by Electrolux to Plaintiffs and other class members are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) the Washing Machines.

104.     Plaintiffs and class members justifiably acted or relied to their detriment upon the concealment and/or non-disclosed facts as evidenced by their purchase of the defective Washing Machines.

105.     Had Plaintiffs and other class members known of the design defects, they would not have purchased the Washing Machines, or would have paid less for them.

106.     Be engaging in the above-described acts and practices, Electrolux has committed one or more acts of unfair competition.

107.     Electrolux's acts and practices have deceived and/or are likely to deceive members of the consuming public and the members of the class.

108.     Electrolux knowingly sold Plaintiffs and other class members Washing Machines with defects that have rendered the Machines essentially unusable for the purposes for which they were sold.

109.     The injury to consumers by this conduct is greatly outweighed by any alleged countervailing benefit to consumers or competition under all of the circumstances.  Moreover, in light of Electrolux's exclusive knowledge of the defects, the injury is not one that Plaintiffs and other class members could have reasonably avoided.

110.     Electrolux's acts and practices are unlawful because they violate the common law duties of good faith and fair dealing, the common law of fraud by omission, and the commercial, consumer protection, and unfair competition laws of various states, including, *inter alia*,

Florida's Deceptive And Unfair Trade Practices Act (F.S.A. 501.201 *et seq.*), Cal. Code §§ 1668, 1709, and 1710, and Cal. Commercial Code § 2313.

111.     By this cause of action, Plaintiffs plead violations of all of the foregoing statutory and common laws.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request, on behalf of themselves and the Class, that this Court:

A.     Determine that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, and issue an order certifying the Class as defined above, appointing Plaintiffs as class representatives and their counsel as Class Counsel;

B.     Award all  damages to which Plaintiffs and the class members are entitled;

C.     An Order awarding injunctive relief by requiring Electrolux to issue corrective actions as described herein;

D.     Grant Declaratory Relief that the Washing Machines described herein contain a defect, which causes biofilm to grow in the Machines;

E.     Award reasonable attorneys' fees, costs and expenses; and

F.     Grant such further and other relief that this Court deems appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES TRIABLE**

Dated:  September 6, 2017

Respectfully submitted,

/s/ R. Brent Irby
R. Brent Irby, *pro hac vice*

McCALLUM, HOAGLUND, COOK &
IRBY, LLP
905 Montgomery Highway, Suite 201
Vestavia Hills, Alabama  35216
Telephone:  (205) 824-7767
Facsimile:  (205) 824-7768
birby@mhcilaw.com

Edward A. Wallace, *pro hac vice*
Tyler J. Story, *pro hac vice*
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois  60603
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022
eaw@wexlerwallace.com
tjs@wexlerwallace.com

Gregory F. Coleman, *pro hac vice*
Adam Edwards, *pro hac vice*
Greg Coleman Law PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee  37929
Telephone: (865) 247-0080
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com

John A. Yanchunis
Florida Bar No. 324681
Patrick A. Barthle
Florida Bar No. 99286
Marisa K. Glassman
Florida Bar No. 111991
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida  33602
Telephone:  (813) 223-5505
Facsimile:  (813) 233-5402
jyanchunis@forthepeople.com
pbarthle@forthepeople.com
mglassman@forthepeople.com

*Attorneys for Plaintiffs and the Putative
Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 6, 2017 a true and correct copy of the foregoing

was electronically filed with the Clerk of the Court by using the CM/ECF system, which will

send a notice of electronic filing to counsel of record for parties in the case.

Richard T. Bernardo
Christopher Cox
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
4 Times Square
New York, NY  10036
Telephone:  212-735-2603
Email:  christopher.cox@skadden.com
       Richard.bernardo@skadden.com

John H. Beisner
Jessica D. Miller
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: 202-371-7000
Facsimile:  202-661-8301
Email:  john.beisner@skadden.com
       jessica.miller@skadden.com

R. Craig Mayfield
BRADLEY, ARANT, BOULT CUMMINGS LLP
100 South Ashley Drive, Suite 1300
Tampa, FL  33602
Telephone:  813-229-3333
Facsimile:  813-229-5946
Email: cmayfield@babc.com

                        /s/ R. Brent Irby_____
                        COUNSEL