## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

WENDY and NICHOLAS GRASSO,
on behalf of themselves and all others
Similarly situated,

                        Plaintiffs,

v.

ELECTROLUX HOME PRODUCTS, INC.

                        Defendant.

Case No.: 8:16-cv-00911-CEH-TGW

CLASS ACTION

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Wendy and Nicholas Grasso ("Plaintiffs") move for preliminary approval of the proposed class action settlement (the "Settlement").[1]  The Settlement will resolve this litigation and the ongoing related case, *Robert Brown v. Electrolux Home Products, Inc.*, No. 1:08-cv-00030-LGW-BKE, pending in the Southern District of Georgia (Augusta Division).  In support of their Motion, Plaintiffs rely on the incorporated Memorandum of Law in Support and the exhibits attached hereto.

## I.  INTRODUCTION

Plaintiffs claim that certain front-load washing machines ("FLWs") manufactured by Electrolux have a propensity to develop mold, mildew, and odor issues in the course of ordinary use.  Similarly, there is an ongoing related case, *Robert Brown v. Electrolux Home Products,*

---

[1] The proposed Settlement Agreement ("Settlement Agreement") is attached hereto as Exhibit 1.  Unless otherwise noted, all terms in this Motion have the same meaning as set forth in the Settlement Agreement.  Additionally, a proposed Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") is attached hereto as Exhibit 2 and the Declaration of R. Brent Irby ("Irby Decl.") is attached as Exhibit 3.

*Inc.*, No.: 1:08-cv-00030-LGW-BKE, pending in the Southern District of Georgia (Augusta Division) against Electrolux involving similar claims relating to FLWs manufactured by Electrolux. The proposed Settlement Agreement encompasses and resolves the ongoing class actions in this Court and in Georgia. The two (2) cases have been hotly contested for over nine (9) years: more than 100,000 pages of documents have been produced and reviewed, dozens of fact and expert depositions have been conducted, numerous expert reports have been prepared, dozens of major motions have been filed, and a trip to the Eleventh Circuit Court of Appeals on the issue of class certification.

Against this backdrop, Plaintiffs and Electrolux have reached an agreement on a proposed nationwide settlement to resolve all claims asserted in both the Florida and Georgia cases. The settlement resulted from hard-fought and arms-length negotiations informed by several years of aggressive and comprehensive litigation. The parties' negotiations began well after substantial fact discovery and motion practice had taken place, including class certification, and concluded only after the parties had completed expert discovery and had briefed summary judgment, numerous *Daubert* challenges, and an appellate ruling from the Eleventh Circuit Court of Appeals on the class certified in the Georgia action.

The proposed Settlement provides substantial benefits to consumers nationwide who purchased certain Electrolux FLWs upon completion of an easy and straight-forward claim form. The class relief includes:

- Class Members who experienced a mold, mildew or Odor Issue within five (5) years of purchasing a class washer have the option to choose (i) a cash payment of $50, (ii) a 20% cash rebate off the retail purchase price of any Electrolux-manufactured appliance contained on a comprehensive Appliance Options List

that is transferrable to immediate family members; or, (iii) reimbursement of up to $500 for out-of-pocket expenses for class washer repairs or replacements due to persistent mold, mildew or Odor Issues, including up to $150 for damaged garments or fabrics. (Settlement Agreement at ¶¶2.2, 2.5.)

- A simplified, straight-forward claims program, including prequalification for benefits for Class Members identified in Electrolux's databases as having reported a mold, mildew or odor problem within five (5) years of purchase of a Class Washer. (*Id*. at ¶¶3.1 – 3.12.)

- Class Members who did not experience a mold, mildew or Odor Issue within five (5) years of purchase of a class washer are entitled to a 5% cash rebate off the retail purchase price of any Electrolux-manufactured appliance contained on the comprehensive Appliance Options List. (*Id*. at ¶2.4.)

Electrolux has also agreed to pay all costs of class notice and claims administration, as well as reasonable attorneys' fees and costs, all separately from, and in addition to, the benefits to class members. (*Id*. at ¶¶5.1 – 5.12, 15.1 – 15.5.)

Plaintiffs respectfully submit that the proposed Settlement is well within the range of reasonableness given the consideration offered to Class Members and the risks of ongoing litigation, including the uncertainty in the pending motions, at trial, and on appeal. This is especially true considering the reversal of class certification by the U.S. Court of Appeals for the Eleventh Circuit in the parallel Georgia action, *Brown v. Electrolux Home Prods., Inc.*, 817 F. 3d 1225 (11th Cir. 2016), and in light of a verdict in favor of Whirlpool Corporation in a similar front-load washing machine class action case that was pending in the Northern District of Ohio.

*See In re: Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, No. 08-wp-65000 (N.D. Ohio).

Plaintiffs respectfully request that the Court enter an order preliminarily approving the Settlement, certifying the class for settlement purposes only, appointing Class Counsel and class representatives, ordering notice disseminated to the class, establishing deadlines for Class Members to opt-out or to object to the settlement, and setting a final approval hearing at which the Court will consider any objections and evaluate the proposed settlement and a separate Motion for Attorneys' Fees and Costs and Class Representative Service Awards.

## II. BACKGROUND

### A. Summary of Plaintiffs' Allegations and Claims.

In this case and in the related case pending in the Southern District of Georgia, Plaintiffs allege that certain Electrolux-manufactured high-efficiency FLWs contain a design defect that results in the washers having a propensity to accumulate bacteria, resulting in mold, mildew and odor issues and damage to garments and other fabrics. (*See Grasso* Doc. 195; *Brown* Doc. 61-2.) Plaintiffs contend that these mold, mildew and odor issues cause nauseous odors and ruin laundry in the course of the washer's ordinary use.

Plaintiffs assert claims against Electrolux for breach of express and implied warranties, violations of state consumer protection statutes, violations of the Magnuson Moss Warranty Act, 15 U.S.C. §2301, *et seq.*, negligent design and unjust enrichment. (*See Grasso* Doc. No. 195.) These claims all relate to the allegation that the Class Washers are defective because they had an undisclosed propensity to accumulate bacteria and mold, thus resulting in mold, mildew and odor issues within the washer. (*See id.*) Defendant contests these allegations in both actions.

Plaintiffs do not allege any claims for personal injury or emotional distress.

B. **History of the Electrolux Litigation.**

As stated, the proposed Settlement Agreement conclusively resolves two (2) pending class actions against Electrolux involving mold, mildew and Odor Issues (as that term is defined in the Settlement Agreement) with Electrolux-manufactured FLWs: *Robert Brown v. Electrolux Home Products, Inc. d/b/a Frigidaire*, No.: 1:08-cv-00030-LGW-BKE (S.D. Ga.) (hereafter the "*Brown* case") and *Wendy and Nicholas Grasso v. Electrolux Home Products, Inc.*, No.: 8:16-cv-00911-CEH-TGW (M.D. Fla.) (hereafter the "*Grasso* case").

1. **The *Brown* Case.**

On March 5, 2008, Michael Terrell filed a putative nationwide class action against Electrolux in the United States District Court for the Southern District of Georgia, Augusta Division (Case No.: 1:08-cv-030), alleging that certain of Electrolux's front-load washing machines contained a design defect that causes them to accumulate mold and mildew which stains laundry, gives off foul odors, and causes the washers to fail of their essential purpose. (See *Brown* Doc. 1.) Additional Plaintiffs, including Robert Brown and Michael Vogler, were subsequently added as class representatives on behalf of state-based subclasses. (*See Brown* Doc. 66.)

Electrolux moved to dismiss the amended complaint and to strike its class allegations. (*Brown* Docs. 35, 43, 80, 87.) These motions were granted in part and denied in part, with the nationwide, but not state-based, class allegations being stricken. (*Brown* Doc. 124.) Thereafter, the parties engaged in extensive discovery.

In July 2011, Plaintiffs Brown and Vogler filed a Renewed [2] Motion for Class Certification on behalf of consumers in California and Texas. (*Brown* Doc. 158.) The district court granted this motion by Order dated October 11, 2013. (*Brown* Doc. 201.)

Electrolux subsequently applied for permission to appeal the class certification order pursuant to Fed. R. Civ. P. 23(f). Its application was granted on April 7, 2015. Thereafter, the parties briefed the appeal and argued the case orally. The Eleventh Circuit Court of Appeals issued an opinion on March 21, 2016, vacating the class certification order and remanding the case for the Court to reconsider several issues. *See Brown*, 817. F. 3d at 1237-38.

Upon remand, the parties filed supplemental briefs addressing the issues raised by the Eleventh Circuit. (*Brown* Doc. 219-221.) Following its receipt and review of the parties' supplemental briefs, the district court denied the Plaintiffs' renewed motion for class certification without prejudice and re-opened discovery for sixty (60) days in order to allow the parties to conduct discovery concerning the likelihood that the defect alleged by the Plaintiffs would manifest throughout the class over the useful life of the washers. (*Brown* Doc. 224.) Thereafter, the parties engaged in intensive discovery on this issue. This discovery included the retention of experts, the inspection of Mr. Brown's and Mr. Vogler's washers, the examination of documents relating to the washers' design, and the deposition of relevant experts.

On April 24, 2017, Electrolux filed *Daubert* motions seeking to exclude Plaintiffs' experts from offering testimony on the likelihood that the defect would manifest throughout the class. (*Brown* Docs. 235, 238.) These motions were granted on July 10, 2017, (*Brown* Doc. 235), and Plaintiffs' experts were disqualified from offering expert testimony on the manifestation issue.

---

[2] A prior Motion for Class Certification filed by Plaintiffs was denied without prejudice for lack of proof of numerosity. (*Brown* Doc. 124.)

## 2. The *Grasso* Case.

On January 2, 2015, Wendy and Nicholas Grasso filed a putative class action in the Circuit Court of Miami-Dade County, Florida. The Grassos filed their case on behalf of all Florida residents that own certain models of Electrolux-manufactured FLWs. Like the plaintiffs in the *Brown* case, the Grassos alleged that an inherent defect within their washing machine caused mold, mildew, and/or biofilm accumulation in their machine. Electrolux removed the case to the Southern District of Florida (*Grasso* Doc. 1) and thereafter moved to dismiss Plaintiffs' Complaint (*Grasso* Doc. 7). That motion was subsequently denied. (*Grasso* Doc. 21.)

Following the denial of its Motion to Dismiss, Electrolux filed a Motion for Reconsideration (*Grasso* Doc. 27) and a Motion to Change Venue (*Grasso* Doc. 28). The parties briefed both motions, and the Court ultimately denied Electrolux's request for reconsideration (Grasso Doc. 44) but granted the request to transfer. (*Grasso* Doc. 47.)

The case was transferred to this Court on April 15, 2016. (*Grasso* Doc. 49.) Throughout the next several months, the parties vigorously conducted class discovery. This phase involved the review and production of thousands of documents, multiple rounds of written discovery, and inspections of the Grassos' washing machines. Additionally, the parties exchanged eleven (11) expert reports and conducted over ten (10) depositions between them.

On December 5, 2016, Plaintiffs filed their Motion for Class Certification. (*Grasso* Doc. 114.) Electrolux opposed that motion (*Grasso* Doc. 125), and filed multiple *Daubert* motions (*Grasso* Docs. 118-123) and a Motion for Summary Judgment. (*Grasso* Doc. 117.) Following extensive motion practice on class certification, *Daubert*, and summary judgment issues, the Court held a hearing on April 5, 2017 on all pending motions. The motions were taken under

advisement (*Grasso* Doc. 177.)  The Court also granted Plaintiffs leave to conduct limited discovery on the issue of whether an extended warranty purchased by the Grassos would have covered the alleged defect in their washing machine.  (*Grasso* Docs. 178-179.)  Plaintiffs completed this discovery and filed a supplemental summary judgment opposition on May 5, 2017 (*Grasso* Doc. 186), which Electrolux responded to on May 19, 2016.  (*Grasso* Doc. 187.)  The parties reached this settlement after oral argument, but before the Court issued a ruling on the aforementioned motions.

### C.  <u>Discovery</u>.

Discovery in this litigation has been extensive and contentious.  Plaintiffs served multiple sets of document requests, interrogatories, and request for admissions.  (Irby Decl., at ¶4.)  Electrolux produced, and counsel for Plaintiffs reviewed and catalogued, over 100,000 pages of documents, including materials regarding the design and marketing of the washers.  (*Id*.)  Plaintiffs' counsel deposed key Electrolux personnel, and Electrolux deposed and inspected the washing machines of the class representatives in the Georgia and Florida cases.  (*Id*.)

Expert discovery was equally comprehensive.  Between them, the parties employed more than ten (10) testifying experts and expert reports, nearly all of whom were subject to depositions, some on more than one occasion.  (*Id*. at ¶5.)  The experts prepared reports related to, among other things, the washers' allegedly defective design, mold growth and testing, consumer perception, and damages.  (*Id*.)

Between this all-encompassing discovery, appellate briefing, and briefing on class certification and summary judgment, the parties could hardly have contested this matter more vigorously, nor done more to understand the relative strengths and weaknesses of their respective positions over the nine (9) year course of this litigation.  (*Id*. at ¶6.)

D.    **Settlement Negotiations.**

In late 2016, the parties began exploring the potential for resolution of the ongoing Electrolux litigation on a class-wide basis. (*Id*. at ¶7.) These discussions were prompted by the parties' desire to avoid the expense, uncertainties, and burden of protracted litigation, and to put to rest any and all claims for causes of action that have been, or could have been, asserted against Electrolux arising out of the allegedly defective FLWs. (*Id*.)

For months throughout 2017, the parties exchanged offers and counter-offers, and negotiated the points of each vigorously. (*Id*. at ¶8.) Counsel for Plaintiffs and Electrolux conducted multiple settlement conferences and exchanged numerous proposals throughout this process. (*Id*.) By June, 2017, the parties had reached an agreement in principle on certain important components related to the potential settlement, and hence executed a written term sheet outlining those material terms agreed to in principle. (*Id*.) As a result of those negotiations, the parties reached an agreement on the material terms of substantive relief for the settlement class. (*Id*.)

After the parties reached an agreement-in-principle on all material terms of substantive relief to the Settlement Class, they began negotiating the amount of attorneys' fees and costs that Electrolux would pay to Class Counsel (subject to Court approval) and the amount of service awards Electrolux would pay to the class representatives (also subject to Court approval). (*Id*. at ¶9.) At all times, the issue of attorneys' fees and costs and class service awards was negotiated separately from, and in addition to, the settlement relief to class members. (*Id*.) Following negotiations, the parties reached agreement-in-principle on those issues on June 13, 2017. (*Id*.)

At all times, the parties' negotiations on all terms were adversarial, non-collusive, and conducted at arms-length. (*Id*. at ¶10.) During their negotiations, the parties had the benefit of

other prior nationwide class settlements with other front-load washer manufacturers resolving similar claims, all of which were met favorably by consumers and the settlement courts.  (*Id.*)  The largest of these prior nationwide settlements involving similar front-load washer litigation was *In re: Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, No.: 08-wp-65000 (N.D. Ohio).  The substantive relief for the settlement class available in this proposed Settlement Agreement is modeled largely in part on the substantive relief available in the *Whirlpool* nationwide class settlement.  (*Id.*)

### III.  TERMS OF THE PROPOSED SETTLEMENT

The Settlement Agreement resolves all claims of Plaintiffs and the Settlement Class against Electrolux.  The Settlement Agreement is attached hereto as Exhibit 1.

### A.      The Settlement Class.

The proposed Settlement Class is defined as:

> All individual consumers who between January 1, 2004, and December 31, 2011, purchased a "Class Washer" (as defined below) in the United States.

> The term "purchased" shall include the acquisition of a Class Washer by (i) payment of consideration for said Class Washer, (ii) as part of the purchase or remodeling of a home, or (iii) receiving a Class Washer as a gift prior to its first use.

> The term "Class Washer" means any new and previously unused high-efficiency front-load washing machine manufactured by Electrolux (including 3.1, 3.5, and 4+ platforms) and sold under the Electrolux, Frigidaire, Crosley, White-Westinghouse, or Kenmore brand names.

> Excluded from the Settlement Class are (a) officers, directors, and employees of Electrolux, (b) insurers of members of the Settlement Class, (c) any entity purporting to be a subrogee of a member of the Settlement Class, (d) all third-party issuers or providers of extended warranties or service contracts for Class Washers, (e) persons who previously settled and released their claims against Electrolux with respect to the front-loading washing machines that are the subject of this Settlement, (f) the Court overseeing the

> proposed settlement and the Court's immediate family, and (g) those individuals who timely and validly exclude themselves from the Class by means of the OptOut Procedure (as defined in the Settlement Agreement).

(Settlement Agreement at ¶1.4.) A list of the washer models that comprise "Class Washers" depending on the date of purchase will be posted on the Settlement Website.

## B.  <u>The Settlement Benefits.</u>

The Settlement provides substantial economic benefits to the Class. Class members who actually experienced a mold, mildew, and/or Odor Issue may elect between (i) a $50 cash payment; (ii) a 20% cash rebate off of the retail purchase price of any Electrolux-manufactured appliance contained on a comprehensive Appliance Options List; **or** (iii) if the class member incurred documented out-of-pocket expenses within five (5) years of purchase to service or replace their class washer  due to mold, mildew, and/or Odor Issues, reimbursement of up to $500, including up to $150 for damaged garments or fabrics. (*Id*. at ¶¶2.2, 2.5.) The rebate eligible appliances contained on the Appliance Options List is extensive and includes over 275 rebate eligible appliances.

All other class members, i.e., those who purchased or acquired a new Class Washer but did not experience a mold, mildew, and/or Odor Issue within five (5) years of purchase, will be eligible to receive a 5% cash rebate off the retail price of an Electrolux-manufactured appliance contained on the comprehensive Appliance Options List. (*Id*. at ¶2.4.) The rebates available to both the mold and non-mold class members are valid for one-year and are transferrable to an immediate family member. (*Id*. at ¶3.1.)

Additionally, Electrolux has also agreed to pay for the reasonable cost of notice and claims administration, and a $4,000 service award in the aggregate to the Grasso plaintiffs and $4,000 to the Brown plaintiff, who are the class representatives in the Settlement. (*Id*. at ¶¶5.3,

16.1.)  Finally, Class Counsel will seek an award of (and Electrolux agrees not to oppose) up to $3,300,000 for attorneys' fees, and up to $400,000 for reimbursement of litigation expenses and costs incurred, all subject to Court approval.  (*Id*. at ¶15.2.)  That amount represents a significant discount to the actual time expended by class counsel litigating these cases, which is estimated to total more than $5 million.  (Irby Decl. at ¶11.)  If approved by the Court, Electrolux will separately pay these fees, costs, expenses and service awards.  (*Id*.)  These amounts will not reduce the amount of benefits available to class members.  (*Id*.)

C.     **The Claims Process.**

Any class member who, based on Electrolux's service call and warranty records, previously made a complaint to Electrolux about mold, mildew, and/or Odor Issues with his class washer within five (5) years of purchase is considered a pre-qualified class member.  (Settlement Agreement at ¶1.20.)  Pre-qualified class members will only need to confirm their names, addresses, and email addresses, check several eligibility boxes on the claim form, and e-sign the claim form.  (*See* Claim Form, attached to Settlement Agreement as Exhibit B-2.)  Non-prequalified class members also have a straight-forward claim form; in addition to the information provided by pre-qualified class members, they need only provide a photograph of the class washer's serial and model numbers or some other proof of purchase, as well as an attestation under oath that they have experienced a mold, mildew, and/or Odor Issue with the class washer within five (5) years of purchase.  (*See* Claim Form, attached to Settlement Agreement as Exhibit B-1.)  Class members will have one-hundred twenty (120) days from the class notice commencement date to submit their claims.  (Settlement Agreement at ¶3.8.)

### D. **The Proposed Notice Plan.**

Within forty-five (45) days of the Court's entry of an Order granting preliminary approval, the Settlement Administrator will send, by first class mail, a copy of the Settlement notice to every class member who can reasonably be identified in Electrolux's warranty and customer service databases. (*Id.* at ¶6.7; Declaration of Steven Weisbrot ("Weisbrot Decl.") at ¶11, attached as Exhibit A to Irby Decl.; *see also* Class Notice, attached to Settlement Agreement as Exhibit E.) The Settlement Administrator will also send the Settlement notice via email to every class member whose email address can be reasonably identified from Electrolux's warranty and customer service records. (Settlement Agreement at ¶6.5; Weisbrot Decl. at ¶11.) The Settlement Administrator will take commercially reasonable steps to update both mail and email addresses. (Settlement Agreement at ¶6.5; Weisbrot Decl. at ¶¶13-14.) The emailed notices will advise class members if they are pre-qualified class members. (Settlement Agreement at ¶6.6; Weisbrot Decl. at ¶15.) The Settlement Administrator will also provide publication notice and additional notice to facilitate participation by class members. (Settlement Agreement at ¶6.2; Weisbrot Decl. at ¶¶16-24.) Class members may submit claims one-hundred twenty (120) days following the initiation of notice to the class. (Settlement Agreement at ¶6.18.)

The Settlement Administrator will establish a website that will provide information sufficient to inform class members of the essential terms of the Settlement Agreement, including the FAQ/Long Form Notice, and the procedure and deadlines for objecting to or excluding themselves from the Settlement. (Settlement Agreement at ¶6.8; Weisbrot Decl. at ¶25.) The website will also provide an easy to use claim form and associated instructions for submitting a claim online. (Settlement Agreement at ¶12.4; Weisbrot Decl. at ¶25.) As previously stated,

Electrolux has agreed to pay all reasonable costs of notice and settlement administration on top of the benefits paid to the class members who file claims. (Settlement Agreement at ¶6.20.)

## IV.  ARGUMENT

### A.  The Proposed Settlement Warrants Preliminary Approval.

At the outset, it should be noted that there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F. 2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-cv-14017, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002). This is because class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (finding that the policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain). Thus, while district courts have discretion in deciding whether to approve a proposed settlement, deference should be given to the consensual decision of the parties. *Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation").

The procedure for review of a proposed class action settlement is a well-established two-step process. ALBA & CONTE, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 38-39 (4th ed. 2002). The first step is a preliminary determination as to whether the proposed settlement is "within the

range of possible approval." *Id*. (quoting MANUAL FOR COMPLEX LITIGATION, §30.41 (3rd ed. 1995)); *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). If it is, then the Court should order notice to be disseminated to all effected members of the class, and schedule a formal fairness hearing where class members may be heard regarding the settlement. *Underwood v. Manfre*, 2014 WL 67644, at *21-22 (M.D. Fla. Jan. 8, 2014). ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies…the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.") (quoting WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS §11:25 (4th ed.)).

At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the "range of reasonableness." 4 NEWBERG ON CLASS ACTIONS, §11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley, Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010); *see also In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. 4 NEWBERG ON CLASS ACTIONS, §11.25. A proposed settlement should be preliminarily approved if it "is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Fresco*, 2007 WL 2330895, at *5 (quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 312 (7th Cir. 1980)).

Where, as here, a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the Court can begin its analysis with a presumption that the Settlement is fair and reasonable. *See* 4 NEWBERG ON CLASS ACTIONS, §11.41; *see also* MANUAL FOR COMPLEX LITIGATION at §30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted); *In re Checking*, 275 F.R.D. at 661 ("Settlement negotiations that involve arms-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness."); *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("Where the parties have negotiated at arms-length, the court should find that the settlement is not the product of collusion.").

Here, the Settlement was the result of intensive, arms-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues involved in front-load washer cases. The Settlement was reached only after numerous negotiations over the course of several months. (Irby Decl. at ¶8.) *See, e.g., Blessing v. Sirius XM Radio, Inc.*, 507 F. App'x. 1, 3 (2nd Cir. 2012) (finding that "the district court did not abuse its discretion when it presumed the proposed settlement was fair" where "competent counsel appeared on both sides" and "settlement was reached only after contentious negotiations"); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 244 (S.D. Ohio 1991) (approving settlement reached "after almost six months of concerted negotiations").

Additionally, the proposed Settlement was reached only after nearly a decade of hard-fought, no-holds-barred litigation, including extensive briefing on class certification, summary judgment, *Daubert* expert issues, and appellate practice concerning class certification. (Irby

Decl. at ¶6.)  The parties conducted discovery on all relevant issues, exchanging more than 100,000 documents and taking numerous fact and expert depositions.  (*Id*. at ¶¶4-5.)  The issue of class certification was repeatedly briefed, and it was argued before the Eleventh Circuit Court of Appeals.  (*Id*. at ¶6.)  Additionally, the parties briefed summary judgment and class certification before this Court.  (*Id*.)  In short, the parties could hardly have litigated these cases more vigorously, or done more to understand the issues in the case or tested their theories and defenses.  (*Id*.)  *See* 4 Newberg On Class Actions, §13:14 ("Where the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that the settlement negotiations occurred at arms-length.").

Further, the Settlement is within the range of reasonableness given the economic benefits conferred and the risks of litigation.  As stated, there have been other prior nationwide class settlements with other front-load washer manufacturers resolving similar claims.  These other settlements were well received by consumers and the settlement courts.  The largest of these prior nationwide settlements involving similar front-load washer litigation was *In re: Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, No. 08-wp-65000 (N.D. Ohio).  The substantive relief for the settlement class available in the proposed Settlement Agreement here is modeled largely in part on the substantive relief available in the *Whirlpool* nationwide class settlement.  In fact, Plaintiffs submit that the substantive relief available for the settlement class here is superior to the class relief proposed and approved in the other front-load washer settlements, including *Whirlpool*.

Much like here, the substantive class relief approved in *Whirlpool* consisted of either a $50 cash payment, a 20% cash rebate off of the retail price of a new Whirlpool washer or dryer, or up to $500 in reimbursement of out-of-pocket expenses in addressing mold or odor problems.

The *Whirlpool* settlement, like here, also provided a 5% cash rebate off the retail price of a new Whirlpool washer or dryer for class members unable to attest to having experienced a mold or mildew problem. However, unlike here, the rebate options available in the *Whirlpool* settlement applied only to Whirlpool-manufactured washers and dryers, or a washer and dryer combo. In contrast, here the rebate options apply to all Electrolux-manufactured appliances contained on the Appliance Options List, which contains over 275 rebate-eligible appliances beyond just washers and dryers. The extensive options here include ovens, electric and gas ranges, stainless steel refrigerators, freezers, dishwashers, and more.

Additionally, the class relief proposed here exceeds the class relief approved in the other front-load washer national class settlements. For example, in *In re: LG Front Loading Washing Machine Class Action Litig.*, No. 2:08-cv-00051-MCA-LDW (D.N.J.), the substantive class relief provided for a $35 cash payment or a rebate certificate worth $105 off of the retail price paid for a new LG brand front-load washing machine. The *LG* settlement did not provide relief for those consumers unable to attest to having experienced a mold or mildew problem, nor did it provide an option for reimbursement of out-of-pocket expenses. Likewise, the substantive class relief approved in *Tait, et al. v. BSH Home Appliances Corp.*, No. 8:10-cv-00711 (C.D. Cal.) consisted only of an available $55 cash payment, with no option for reimbursement of out-of-pocket expenses.

In sum, the Settlement is within the range of reasonableness and confers substantial economic benefits which compare favorably with those of other settlements in front-load washer cases that have been approved by courts.

The Settlement is even more compelling given the substantial litigation risks the settlement class faced. First, while the Settlement provides meaningful benefits to all class

members nationwide, certifying a nationwide litigation class would have been very challenging. Indeed, even as to the two (2) states certified as classes in the *Brown* action, maintaining certification through trial was in no way guaranteed, as is evidenced by the Eleventh Circuit's reversal of class certification. *See Brown*, 817 F.3d 1225.

The settlement class also faced risks beyond just class certification. Electrolux's summary judgment motion filed in this Court sought to eliminate the claims of a significant subset of the proposed class. (*See Grasso* Doc. 117.) Likewise, Electrolux has asserted significant *Daubert* challenges to Plaintiffs' experts which remain pending. (*See Grasso* Docs. 118, 120-123.) Indeed, Plaintiffs' experts on class certification were excluded in the Georgia case. (*See Brown* Doc. 235.) Further, the defense verdict in the *Whirlpool* front-load washing litigation further underscores the inherent uncertainty in any trial. The value of any judgment would therefore be discounted by the delay the class members would suffer in actually obtaining a judgment. By contrast, the proposed settlement provides certain, timely, and substantial relief. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (in weighing the risk of future litigation, "a court may consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (internal quotes omitted). Assessed against the delays and uncertainties associated with trial and appeals, the Settlement provides immediate, substantial economic benefits and falls within the range of reasonableness.

**B.**     **The Proposed Class Should Be Certified For Settlement Purposes Only.**

Prior to granting preliminary approval of a proposed settlement, the Court should first determine that the proposed Settlement Class is appropriate for certification. *See* MANUAL FOR COMPLEX LITIGATION, §21.632 (4th ed. 2004)); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591,

620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a)(1)—(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

"[A] class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 U.S. Dist. LEXIS 189397, at *3 (S.D. Fla. Oct. 4, 2013) (quoting *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620. This case meets all of the Rule 23(a) and 23(b)(3) prerequisites, and for the reasons set forth below, certification is appropriate for settlement purposes only.

### (1) Numerosity

Rule 23(a)(1) requires a party seeking class certification to demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). It is not necessary for plaintiffs to demonstrate that they know the exact size of the class to satisfy numerosity. *See, e.g., Evans v. U.S. Pipe & Foundry Company*, 696 F.2d 925, 930 (11th Cir.

1983). In the Eleventh Circuit, more than forty class members is sufficient. *Cox v. AmCast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, the Settlement class is estimated to include hundreds of thousands of class members and so numerosity is satisfied.

### (2) Commonality

Rule 23(a)(2) requires that class members share common questions of law and fact. Notably, Rule 23(a)(2) "does not require that *all* of the questions of law or fact raised by the case be common to all the plaintiffs," *Walco,* 168 F.R.D. at 325, but "a class action must involve issues that are susceptible to classwide proof." *Cooper v. Southern Co.*, 390 F. 3d 695, 714 (11th Cir. 2004). In other words, class members' claims must depend on a common contention that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "What matters to class certification . . . is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*.

However, commonality is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking*, 307 F.R.D. at 668 (internal quotes omitted). To satisfy commonality, there need only be a single common question capable of being answered on a classwide basis whose resolution is central to the validity of each claim. *See Dukes*, 131 S. Ct. at 2551; *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).

The commonality requirement is readily met in cases such as this one involving a defective product. *See Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 538 (S.D. Fla. 2015); *Rosen v. J.M. Auto., Inc.*, 270 F.R.D. 576, 681-82 (S.D. Fla. 2009). In product defect cases, the "central questions in the litigation are the same for all class members," including whether the products "suffered from an inherent defect when they left the factory, whether and when [the defendant] knew about the defect, [and] the scope of [defendant's] warranty . . . ." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010).

Here, Plaintiffs contend that the class washers share a common defect that results in the products having a propensity to develop mold, mildew and Odor Issues. Plaintiffs and class members' claims depend on common questions that necessarily require common answers, namely whether the washing machines are defective. The answers to this question and other common questions will be the same for each class member. Thus, common answers to these common questions will drive the resolution of Plaintiffs' claims on a class-wide basis.

### (3) Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Like the commonality requirement, the typicality requirement is permissive: representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *In re Checking,* 275 F.R.D. at 674. In general, "the claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Williams*, 568 F.3d at 1357. The typicality requirement is "not demanding," *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1325-26 (N.D. Ga. 2007); *In re Disposable Contact Lens Antitrust Litig.*,

170 F.R.D. 524, 532 (M.D. Fla. 1996), requiring only some nexus between the names plaintiffs' claims and the common questions uniting the class. *See, e.g., Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

"Although similar to commonality in that it concentrates on the 'nexus' between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class." *Rosen*, 270 F.R.D. at 683 (citing *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1269 (11th Cir. 2000)). Thus, "[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Id.* (citing *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)).

Here, the typicality requirement is met because the class representatives suffered the same alleged injury - - - mold, mildew, and/or Odor Issues resulting from an alleged defect in their washers - - - as the other class members. Plaintiffs' claims are based on the same legal theory as other class members. Because there is a "sufficient nexus" between the Plaintiffs' claims and the claims of Settlement class members, the typicality requirement is satisfied. *Hines v. Widnall*, 334 F. 3d 1253, 1256 (11th Cir. 2003).

### (4)     Adequacy

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." This "adequacy-of-representation requirement encompasses two (2) separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

"Adequacy of representation is presumed unless there is evidence to the contrary." *Brown v. SCI Funeral Servs. of Florida, Inc.*, 212 F.R.D. 602, 605 (S.D. Fla. 2003).

No conflicts exist between the Grassos and the putative class or Brown and the putative class. Both the Grassos and Brown are committed to seeking a remedy on behalf of the class for the moldy washing machines they all purchased.[3] Both the Grassos and Brown have actively participated in the litigation of this matter, including having 30 to 40 conversations with counsel, exchanging upwards of 50 emails with counsel, reviewing and revising the Complaint, responding to interrogatories, producing documents, making their home available for inspection, and appearing for their depositions.[4]

Adequacy also requires qualified and competent counsel. *Piazza*, 273 F.3d at 1346. Plaintiffs' counsel have extensive experience in prosecuting complex product defect actions such as this one.[5] Class counsels' experience qualifies them to vigorously prosecute this action on behalf of the Class.

### (5) The Proposed Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3).

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class must also meet one of the three (3) requirements of Rule 23(b). *In re Checking*, 286 F.R.D. at 650. Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) questions of

---

[3] *See* Yanchunis Decl., attached as Ex. H to Grasso Doc. 114 (W. Grasso Tr. at 137:3-10), G (N. Grasso Tr. at 64:10-18; 84:15-20).

[4] *See* Yanchunis Decl., attached as Exs. H to Grasso Doc. 114 (W. Grasso Tr. at 29:20-30:4; 113:7-116:25), G (N. Grasso Tr. at 9:3-5; 65:19-67:3; 75:12-79:10); *see* Brown Doc. 20 at 28 (finding Brown to be an adequate class representative).

[5] *See* Yanchunis Decl., attached as Exs. S to Grasso Doc. 114 (qualifications of Morgan & Morgan, PA) T (qualifications of Wexler Wallace LLP), U (qualifications of McCallum, Hoaglund & Irby, LLP), V (qualifications of Greg Coleman Law, PC).

law and fact common to members of the class predominate over any questions affecting only individuals, and that (ii) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a classwide basis." *Agan v. Kateman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004). The proposed Settlement class readily meets these requirements.

### a.  Common Questions of Law and Fact Predominate.

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class-wide basis, *see Dukes*, 131 S. Ct. at 2551-57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Hinson Elec.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F. 3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages . . . ."). Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking,* 275 F.R.D. at

660. When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 194 F. Ed. 2d 124, 134, 2016 WL 1092414 (U.S. 2016); 7AA C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE §1778 at 123-124 (3d ed. 2005) (footnotes omitted).

Common issues readily predominate here because the central liability question in this case – whether the subject washers are defective – can be established through generalized evidence. *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

Because the claims are being certified for purposes of settlement only, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *Amchem,* 521 U.S. at 620 ("confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

> **b.** **A Class Action Is the Superior Method for Adjudicating This Controversy.**

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry

into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F. 3d 1350, 1359 (11th Cir. 2002)).

Factors the Court may consider are: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class. As noted earlier, any perceived difficulties managing the Settlement Class need not be considered in this settlement context. *Amchem*, 521 U.S. at 620; *Sullivan v. DB Invs., Inc.*, 667 F. 3d 273, 302-03 (3d Cir. 2011) (holding that potential variances in different states' laws would not defeat certification of a settlement-only class because trial management concerns were not implicated by a settlement-only class, as opposed to a litigated class). A class action settlement is superior to other means of resolution because a settlement affording Settlement Class Members an opportunity to receive compensation benefits *all* parties.

Here, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment in the instant case, each Settlement class member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that members of the Settlement class have an interest in individual litigation or an incentive to pursue their claims individually, given the small amount of damages likely to be recovered, relative to

the resources required to prosecute such an action. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). Additionally, the proposed Settlement will give the parties the benefit of finality, and because this case has now been settled, pending Court approval, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case . . . would present intractable management problems . . . .").

The Court should certify the class for settlement purposes only, as the superiority requirement is satisfied, along with all other Rule 23 requirements.

### (6)    The Court Should Approve the Proposed Notice Program.

Rule 23(e)(1)(B) requires that the Court direct notice in a reasonable manner to all class members who would be bound by the proposed settlement. Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be reasonably identified through reasonable effort." *Id*. "[W]hat amounts to reasonable efforts under the circumstances is for the Court to determine after evaluation of the available information and the possible methods of identification." *In re Domestic Air*, 141 F.R.D. 535, 539 (N.D. Ga. 1992). The best notice practicable must "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *Id*. at 553 (internal quotations omitted).

The comprehensive Notice program satisfies the requirement of Rule 23 and due process. It provides direct, individual notice to Settlement class members who can reasonably be

identified from Electrolux's records. *See id*. at 539. In addition to direct notice, Settlement class members will be notified of the Settlement through publication, a dedicated website, and internet banners – methods intended to reach as many Settlement class members as possible. *Id*. at 549-553 (approving a proposed publication program that was "geographically broad and designed to reach the maximum number of class members").

The Notice will concisely and clearly state in plain, easily understood language the following information: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members." Fed. R. Civ. P. 23(c)(2)(B). The proposed forms of notice also provide further details about the Settlement and its benefits. They are written in plain English and explain how class members can obtain further details and assistance.

## V.    REQUEST FOR HEARING

Pursuant to Local Rule 3.01(j) and Federal Rule of Civil Procedure 6(c), Plaintiffs respectfully request a hearing on their Motion in fourteen (14) days (October 24, 2017) or later, or at such time as determined by this Court. Plaintiffs submit that a hearing would be appropriate in this case to fully inform the Court of the Settlement details and administration of notice and relief to class members. Plaintiffs estimate that one (1) hour would be sufficient.

## VI.    PRECISE RELIEF REQUESTED

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1.      preliminarily approve the Settlement Agreement;

2.      enter the Parties' proposed Preliminary Approval Order attached hereto as Exhibit 2 (and also Exhibit A to the Parties' Settlement Agreement);

3.      certify the Rule 23(b)(3) class (defined on pages 10-11 above) for settlement purposes only;

4.      appoint Class Counsel as Settlement Class Counsel;

5.      appoint Angeion Group, LLC as the Settlement Administrator;

6.      order notice of the Settlement to be provided to members of the Settlement class in substantially the form of the proposed Notices provided and according to the notice plan as reflected in the proposed Preliminary Approval Order and the declaration of Steven Weisbrot, Esq. of Angeion Group;

7.      approve the Claim Forms; and

8.      enter the proposed schedule, (described in the Proposed Order attached as Ex. A to the Settlement Agreement) or another schedule, for notice, opt-out deadlines, objections deadlines, and dates for final approval briefing and hearing.

Dated:  October 10, 2017

Respectfully submitted,

/s/ R. Brent Irby
R. Brent Irby, *pro hac vice*
McCALLUM, HOAGLUND, COOK &
IRBY, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, Alabama  35216
Telephone:  (205) 824-7767
Facsimile:  (205) 824-7768
birby@mhcilaw.com

Edward A. Wallace, *pro hac vice*
Tyler J. Story, *pro hac vice*
WEXLER WALLACE LLP
55 West Monroe Street
Suite 3300
Chicago, Illinois  60603
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022
eaw@wexlerwallace.com
tjs@wexlerwallace.com

Gregory F. Coleman, *pro hac vice*
Adam Edwards, *pro hac vice*
Greg Coleman Law PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com

John A. Yanchunis
Florida Bar No. 324681
Patrick A. Barthle
Florida Bar No. 99286
Marisa K. Glassman
Florida Bar No. 111991
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 233-5402
jyanchunis@forthepeople.com
pbarthle@forthepeople.com
mglassman@forthepeople.com

*Attorneys for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 10, 2017 a true and correct copy of the foregoing

was electronically filed with the Clerk of the Court by using the CM/ECF system, which will

send a notice of electronic filing to counsel of record for parties in the case.

Richard T. Bernardo
Christopher Cox
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
4 Times Square
New York, NY  10036
Telephone:  212-735-2603
Email:  christopher.cox@skadden.com
      Richard.bernardo@skadden.com

John H. Beisner
Jessica D. Miller
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: 202-371-7000
Facsimile:  202-661-8301
Email:  john.beisner@skadden.com
      jessica.miller@skadden.com

R. Craig Mayfield
BRADLEY, ARANT, BOULT CUMMINGS LLP
100 N. Tampa Street, Suite 2200
Tampa, Florida  33602
Telephone:  813-559-5500
Facsimile:  813-229-5946
Email: cmayfield@bradley.com

               /s/ R. Brent Irby_____
               COUNSEL