**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| WENDY and NICHOLAS GRASSO, on behalf of themselves and all others Similarly situated, | |
| Plaintiffs, | Case No.: 8:16-cv-00911-CEH-TGW |
| | CLASS ACTION |
| v. | |
| ELECTROLUX HOME PRODUCTS, INC. | |
| Defendant. | |

### PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

After nearly a decade of hard-fought litigation, Settlement Class Counsel ("Class Counsel") negotiated a nationwide settlement that resolves two pending class actions[1] against Electrolux involving allegations of mold, mildew and odor issues in certain models of Electrolux-manufactured front-load washers. The Settlement provides class relief in the form of cash payments, cash rebates off the retail purchase of other Electrolux-manufactured appliances, and reimbursement for out-of-pocket expenses for class washer repairs, replacements, or damage to garments or fabrics. As previously noted at preliminary approval, the relief made available for the Settlement Class is modeled largely on the relief made available in another nationwide settlement involving front-load washers, *In re: Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, No.: 08-wp-65000 (N.D. Ohio), which received final approval in September 2016. Electrolux has agreed to pay all costs of Class Notice and claims administration, as

---

[1] In addition to the instant matter (hereinafter "*Grasso*"), the proposed Settlement also resolves a parallel class action *Robert Brown v. Electrolux Home Products, Inc.*, No. 1:08-cv-00030, pending in the Southern District of Georgia, Augusta Division (hereinafter "*Brown*").

well as reasonable attorneys' fees and costs, all separately from, and in addition to, the benefits to Class members. To compensate them for their efforts, Class Counsel request attorneys' fees in the amount of $3,300,000.00, reimbursement of $400,000.00 in litigation expenses, and Class Representative service awards of $4,000.00 in the aggregate to the *Grasso* plaintiffs and $4,000.00 to the *Brown* plaintiff. These amounts were disclosed in the Notice sent to Class members and on the Settlement website.

As discussed below, the requested fee is reasonable under a lodestar analysis, representing a discount and *negative multiplier* on the lodestar Class Counsel expended over the course of this nine-year litigation. Class Counsel's request is approximately 63% of their total lodestar—$5.26 million—incurred during this lengthy litigation. The requested fee is also reasonable under the analysis and factors set forth in *Camden I Condominium Association, Inc. v. Dunkle,* 946 F.2d 768 (11th Cir. 1991). Additionally, Class Counsel's expenses were reasonably and necessarily incurred. For these reasons, the requested fees and expenses should be approved. Finally, the Court should also approve service awards of $4,000.00 in the aggregate to the *Grasso* plaintiffs and $4,000.00 to the *Brown* plaintiff, as provided by the Settlement, to compensate them for the time and effort each provided in furtherance of their obligations as Class Representatives. The service awards are warranted legally and factually under the circumstances of this litigation.

## FACTUAL BACKGROUND

A detailed account of this litigation and settlement background is set forth in Plaintiffs' preliminary approval brief (Doc. 199 at 5-10), whereas this brief focuses on Class Counsel's work. Additional descriptions of the time and labor performed by Class

Counsel are included in the declarations[2] submitted contemporaneously herewith. A declaration is also submitted from Tampa attorney Burt Wiand, an expert in complex litigation and class action attorneys' fee matters.[3]

While a full account of this litigation is presented in Plaintiffs' preliminary approval papers (Doc. 199 at 5-10), it is worth reiterating that the proposed Settlement was reached only after nearly a decade of hard-fought, no-holds-barred litigation, including extensive briefing on class certification, summary judgment, *Daubert* challenges, and appellate practice before the Eleventh Circuit Court of Appeals concerning class certification. In fact, the issue of class certification was repeatedly briefed, and it was orally argued before the Eleventh Circuit Court of Appeals. Additionally, the parties briefed summary judgment, class certification, and *Daubert* issues before this Court, and the Court held a hearing on April 5, 2017 on all pending motions. The parties reached this Settlement after oral argument, but before the Court issued a ruling on these motions. In short, the parties could not have litigated these cases more vigorously, or done more to understand the relative strengths and weaknesses of their respective positions over the nine-year course of this litigation.

Class counsel's extensive work in this litigation is also exemplified by the following:

- Electrolux produced, and Class Counsel reviewed and catalogued, over 100,000 pages of documents;

---

[2] *See* Declaration of R. Brent Irby (hereinafter "Irby Decl."), attached hereto as Exhibit 1; Declaration of Edward A. Wallace (hereinafter "Wallace Decl."), attached hereto as Exhibit 2; Declaration of John C. Bell, Jr. (hereinafter "Bell Decl."), attached hereto as Exhibit 3; Declaration of Gregory F. Coleman (hereinafter "Coleman Decl."), attached hereto as Exhibit 4; Declaration of John Yanchunis (hereinafter "Yanchunis Decl."), attached hereto as Exhibit 5; Declaration of Jason L. Lichtman (hereinafter "Lichtman Decl."), attached hereto as Exhibit 6.

[3] Declaration of Burt Wiand (hereinafter "Wiand Decl."), attached hereto as Exhibit 7.

- The parties employed more than ten testifying experts who issued expert reports, most of whom were subject to depositions, some on more than one occasion; and

- Class Counsel deposed numerous Electrolux personnel, and Electrolux deposed and inspected the washers of each Class Representative.

In addition to these vigorous litigation efforts, in late 2016, the parties began exploring potential resolution of the ongoing litigation on a class-wide basis. (Irby. Decl. at 10.) For months throughout 2017, the parties exchanged settlement offers and counter-offers. (*Id.*) Counsel for the parties also conducted multiple settlement conferences before reaching an agreement in principle by June 2017. (*Id.*) After an agreement-in-principle had been reached on all material terms of substantive relief to the Settlement Class, the parties began negotiating the amount of attorneys' fees, expenses, and service awards Electrolux would pay, subject to the Court's approval. (*Id.* at 11.) At all times, the issue of attorneys' fees, expenses, and service awards was negotiated separately, and in addition to, the relief to Settlement Class Members. (*Id.*)

## ARGUMENT AND CITATION OF AUTHORITY

### I.  THE REQUESTED FEE IS REASONABLE

The Federal Rules of Civil Procedure expressly authorize that "the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. As the United States Supreme Court explains, "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive

at a settlement as to attorneys' fees."); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves."). Accordingly, courts regularly approve agreed-upon attorneys' fee awards paid by the defendant, rather than the class members, especially where that amount does not decrease the benefit obtained for the class. *E.g., In re LG/Zenith Rear Projection Television Class Action Litig.*, 2009 WL 455513, at *8-9 (D.N.J. Feb. 18, 2009) (approving agreed upon attorneys' fee award that did not diminish the fund); *In re Ins. Brokerage Antitrust Litig.*, 2007 WL 1652303, at *4 (D.N.J. June 5, 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009) (same); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 106 F. Supp. 2d 721, 732 (D.N.J. 2000) (finding it significant that attorneys' fees would not diminish settlement fund); *see also McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006) (granting class counsel full amount of fees agreed to by defendant where the attorneys' fees were separate from the class settlement and did not diminish the class settlement); *In re Sony SRXD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *15-16 (S.D.N.Y. May 1, 2008) (same); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) (same); *Bezio v. Gen. Elec. Co.*, 655 F. Supp. 2d 162, 167-68 (N.D.N.Y. 2009) (same); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007) (same).

Pursuant to the terms of the Settlement, Electrolux agreed to pay reasonable attorneys' fees and costs, all separately from, and in addition to, the benefits to Class members. The parties agreed that Class Counsel would not seek sums in excess of $3,300,000.00 in attorneys' fees, $400,000.00 in expense reimbursements, and service awards of $4,000.00 in the aggregate to the *Grasso* plaintiffs and $4,000.00 to the *Brown*

plaintiff. For the reasons set forth below, these amounts are fair and reasonable. Under controlling authority in this Circuit this Court has discretion to base an award of attorneys' fees on either the lodestar method or the percentage of the common benefit recovered. *Camden I*, 946 F.2d at 774-75; *see also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) (fee supported by percentage of common fund approach also fair and reasonable under lodestar approach). However, the lodestar method is appropriate in a settlement like this, which contains a claims-made structure that has no upper cap on relief. This is because the claims-made structure has an indefinite total value and is not usually capable of being characterized as a "common fund" for purposes of a percentage-of-the-fund analysis. *See, e.g.*, Rubenstein, Newberg on Class Actions § 15:56 (5th ed. 2016) (noting that "[c]laims-made settlements do not create a common fund").

### A.  The Requested Fee is Reasonable Under the Lodestar Approach

The requested fee is entitled to a presumption of reasonableness under the lodestar approach. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993) ("A lodestar figure that is based upon a reasonable number of hours spent on a case multiplied by a reasonable hourly rate is itself strongly presumed to be reasonable.") (citing *Burlington v. Dague*, 505 U.S. 557, 562 (1992)). Courts may use a lodestar analysis in lieu of the percentage method when a proposed settlement resolves claims under a fee-shifting statute. *Dikeman v. Progressive Express Ins. Co.,* 312 Fed. Appx. 168, 172 (11th Cir. 2008). Lodestar may also be used as a cross-check in applying the percentage approach. *See Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1298 (11th Cir. 1999).

The requested fee is reasonable under the lodestar method, whether used as the primary means of analysis or a cross-check. (Irby Decl. at 12-18; Wallace Decl. at 3-4;

Yanchunis Decl. at 5-6; Lichtman Decl. at 6.) To date, Class Counsel has devoted 11,075.6 hours to the *Brown* and *Grasso* cases, which have been documented by Class Counsel in detailed time records maintained since the inception of the litigation.[4] Class Counsel have thoroughly reviewed all time records and excluded any hours as duplicative, unauthorized, or of insufficient benefit. (Irby Decl. at 13; Lichtman Decl. at 6.) Moreover, these time records do not include the work required of Class Counsel for purposes of this motion nor the additional work that will be required of Class Counsel going forward, including the rigors of a Final Fairness Hearing, responding to Class member inquiries, overseeing the Notice and administration of the Settlement, defending objections and, if necessary, resulting appeals following the Court's final judgment.

The full lodestar value of Class Counsel's time is $5,265,698.73, calculated using standard hourly rates (Irby Decl. at 14; Yanchunis Decl. at 5-6; Lichtman Decl. at 6.) The following tables summarize Class Counsel's time in the *Brown* case and the instant matter:

***P-Partner, A-Associate, OC-Of Counsel, PL-Paralegal, LC-Law Clerk***

***Wexler Wallace LLP***:

*Brown v. Electrolux Home Prods., Inc.*:

| Biller | Hours | Rates | Amount |
|--------|-------|-------|--------|
| KAW (P) | 52.40 | 725.00 | $37,900.00 |
| EAW (P) | 172.00 | 675.00 | $116,100.00 |
| MJT (P) | 697.10 | 525.00 | $365,977.50 |
| MRM (P) | 87.80 | 600.00 | $52,680.00 |
| AEK (A) | 515.40 | 485.00 | $249,969.00 |
| AMN (A) | 23.80 | 285.00 | $6,783.00 |
| AP (A) | 14.00 | 340.00 | $4,760.00 |
| IJB (A) | 983.30 | 300.00 | $294,990.00 |
| MHB (A) | 21.70 | 525.00 | $11,392.50 |
| ND (A) | 303.90 | 300.00 | $91,170.00 |
| TJS (A) | 90.80 | 350.00 | $31,780.00 |
| TAD (OC) | 19.20 | 600.00 | $11,520.00 |

---

[4] Upon request, Class Counsel will make these records available for the Court's review *in camera*.

| Biller | Hours | Rates | Amount |
|---|---|---|---|
| SKQ (LC) | 4.60 | 250.00 | $1,150.00 |
| JYK (LC) | 4.20 | 200.00 | $840.00 |
| KF (LC) | 18.20 | 250.00 | $4,550.00 |
| ACS (PL) | 53.70 | 275.00 | $14,767.50 |
| AO (PL) | 91.50 | 275.00 | $25,162.50 |
| DMG (PL) | 1.40 | 150.00 | $210.00 |
| JLC (PL) | 3.90 | 150.00 | $585.00 |
| KMD (PL) | 9.50 | 150.00 | $1,425.00 |
| MS (PL) | 1.50 | 150.00 | $225.00 |
| ERC (PL) | 8.90 | 275.00 | $2,447.50 |
| SR (PL) | 2.20 | 150.00 | $330.00 |
| VAR (PL) | 35.80 | 150.00 | $5,370.00 |
| **Total** | **3216.80** | | **$1,332,084.50** |

*Grasso v. Electrolux Home Prods., Inc.*:

| Biller | Hours | Rates | Amount |
|---|---|---|---|
| EAW (P) | 5.50 | 675.00 | $3,712.50 |
| AEK (A) | 880.50 | 485.00 | $427,042.50 |
| AP (A) | 49.40 | 340.00 | $16,796.00 |
| JJ (A) | 16.80 | 350.00 | $5,880.00 |
| MHB (A) | 165.30 | 525.00 | $86,782.50 |
| SKQ (A) | 24.70 | 325.00 | $8,027.50 |
| TJS (A) | 157.00 | 350.00 | $54,950.00 |
| ACS (PL) | 1.40 | 275.00 | $385.00 |
| AO (PL) | 41.30 | 275.00 | $11,357.50 |
| ERC (PL) | 257.00 | 275.00 | $70,675.00 |
| BM (LC) | 7.30 | 275.00 | $2,007.50 |
| KF (LC) | 12.40 | 250.00 | $3,100.00 |
| **Total** | **1,618.60** | | **$690,716.00** |

**McCallum Hoaglund & Irby, LLP**:

*Brown v. Electrolux Home Prods., Inc.*:

| Biller | Hours | Rates | Amount |
|---|---|---|---|
| CAM (P) | 302.0 | $625 | $188,750.00 |
| RBI (P) | 1,689.9 | $525 | $887,197.50 |
| SBH (A) | 201.9 | $325 | $65,617.50 |
| LM (PL) | 123.0 | $150 | $18,450.00 |
| **Total** | **2,316.8** | | **$1,160,015.00** |

*Grasso v. Electrolux Home Prods., Inc.*:

| Biller | Hours | Rates | Amount |
|---|---|---|---|
| CAM (P) | 33.2 | $625 | $20,750.00 |
| RBI (P) | 521.6 | $525 | $273,840.00 |
| SBH (A) | 365.8 | $325 | $118,885.00 |
| LM (PL) | 24.5 | $150 | $3,675.00 |
| **Total** | **945.1** | | **$417,150.00** |

***Greg Coleman PC***:

*Grasso v. Electrolux Home Prods., Inc.*:

| Biller | Hours | Rates | Amount |
|---|---|---|---|
| GAC (P) | 316.10 | $725 | $229,172.50 |
| MES (P) | 62.10 | $625 | $38,812.50 |
| AEA (P) | 449.05 | $620 | $278,625.00 |
| LAW (P) | 136.40 | $625 | $85,250.00 |
| JGD (A) | 236.65 | $425 | $100,576.25 |
| Paralegal | 18.25 | $200 | $3,650.00 |
| DC (PL) | 3.30 | $200 | $660.00 |
| DLH (PL) | 12.90 | $250 | $3,225.00 |
| BL (A) | 121.40 | $425 | $51,594.88 |
| **Total** | **1,356.15** | | **$791,566.13** |

***Morgan & Morgan P.A.***:

*Grasso v. Electrolux Home Prods., Inc.*:

| Biller | Hours | Rates | Amount |
|---|---|---|---|
| JY (P) | 108.9 | $950 | $103,455.00 |
| MV (P) | 8.3 | $864 | $7,171.20 |
| MG (P) | 245 | $636 | $155,820.00 |
| PB (A) | 242.85 | $450 | $109,282.50 |
| JC (PL) | 1.4 | $196 | $274.40 |
| **Total** | **606.45** | | **$376,003.10** |

***Bell & Brigham***

*Brown v. Electrolux Home Prods., Inc.*:

| Biller | Hours | Rates | Amount |
|---|---|---|---|
| JCB (P) | 223.4 | $600 | $134,040.00 |
| LWB (P) | 473.8 | $525 | $248,745.00 |
| TTN (A) | 34.5 | $300 | $10,350.00 |
| MTJ (PL) | 89.3 | $150 | $13,395.00 |
| EB (PL) | 62.0 | $125 | $7,750.00 |
| **Total** | **883** | | **$414,280.00** |

***Lieff Cabraser Heimann & Bernstein, LLP***

*Brown v. Electrolux Home Prods., Inc.*:

| Biller | Hours | Rates | Amount |
|---|---|---|---|
| JS (P) | 7.9 | $850.00 | $6,715.00 |
| RG (P) | 1.0 | $725.00 | $725.00 |
| JL (P) | 64.2 | $565.00 | $36,273.00 |
| JL (A) | 1.9 | $465.00 | $883.50 |
| JM-C (A) | 73.0 | $365.00 | $28,835.00 |
| NBB (PL) | 1.8 | $360.00 | $648.00 |
| MB (PL) | 5.8 | $315.00 | $1,827.00 |

| | | | |
|---|---|---|---|
| TC (PL) | 3.2 | $360.00 | $1,152.00 |
| RD (PL) | .10 | $345.00 | $34.50 |
| SG (PL) | 5.7 | $350.00 | $1,995.00 |
| KM (PL) | 8.3 | $280.00 | $2,324.00 |
| JE (OC) | 4.8 | $515.00 | $2,472.00 |
| **Total** | **177.70** | | **$83,884.00** |

In sum, Class Counsel spent 6,594.3 hours in *Brown* and 4,526.3 hours in *Grasso*, amounting to a total lodestar of $2,990,263.50 in *Brown* and $2,275,435.23 in *Grasso*. (*See generally* Irby Decl. at 13-14; Wallace Decl. at 3-4; Bell Decl. at 6; Coleman Dec. at 3; Yanchunis Decl. at 6; Lichtman Decl. at Ex. A.)

"The second half of calculating the 'lodestar' is determining the 'reasonable hourly rate' for the attorneys' services. A reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" *ACLU v. Barnes*, 168 F.3d 423, 436 (11th Cir. 1999) (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). Here, Class Counsel's rates are consistent with the prevailing market rate within the community and the rates of other attorneys in complex litigation matters. (*See* Irby Decl. at 14-15; Yanchunis Decl. at 5-6; Lichtman Decl. at 6.) Indeed, Burt Wiand, who is well versed in complex litigation and Eleventh Circuit precedent on attorney fee awards explained, "In the Middle District of Florida and nationally, lawyers of this level of sophistication handling these types of cases charge fees that range from $400 per hour to $1,000 per hour." (Wiand Decl. at 7.) Moreover, the hourly rates, which vary appropriately between attorneys and paralegals depending on the position, experience level, and locale of the particular professional, are set forth individually in the Declarations, charts, and exhibits included therewith. (*See generally* Irby Decl. at 13-14; Wallace Decl. at 3-4; Bell Decl. at 6; Coleman Dec. at 3; Yanchunis Decl. at 6; Lichtman Decl. at Ex. A.) The hourly charges are based on reasonable hourly

10

billing rates for such services given the geographical area, the nature of the services provided and the experience of the lawyer. (Wiand Decl. at 6-7); *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d. Cir. 2000).

In connection with the lodestar approach, courts frequently apply a *positive* multiplier to reward counsel for their risk, the contingent nature of the fee, and the result obtained. Here, however, Class Counsel's fee request actually represents a *negative* multiplier since the request only reflects approximately 63% of their total lodestar of $5.26 million. This multiplier will necessarily continue to shrink as additional time is expended implementing and seeking final approval of the Settlement. As such, Class Counsel's fee request is well below the accepted range. *E.g., Pinto v. Princess Cruise Lines Ltd.,* 513 F. Supp. 2d 1334, 1344 (S.D. Ga. 2007) (multipliers "'in large and complicated class actions' range from 2.26 to 4.5 while three appears to be the average."); *Ingram,* 200 F.R.D. at 694-96 (multipliers range from less than two to more than five); *Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 . . . is not unusual or unreasonable."); *Columbus Drywall & Insulation, Inc.,* 2012 WL 12540344 at *4 (approving a multiplier of 4). The requested lodestar is inarguably reasonable under Eleventh Circuit precedent and the circumstances of this case.

**B.  The Requested Fee is Supported by the *Johnson* Factors**

In *Camden I*, the Eleventh Circuit recommended that district courts consider the twelve *Johnson* factors in assessing attorney fee applications, including:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the

11

"undesirability" of the case; (11) the nature and length of the professional
relationship with the client; and (12) awards in similar cases.

946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714
(11th Cir. 1974)); *see also Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir.
2015), *cert. denied sub nom. Frank v. Poertner*, 136 S. Ct. 1453 (2016) (applying
*Camden I*). As set forth below, the requested fee is reasonable and well supported by the
*Johnson* factors.[5]

### (1)    The Time and Labor Involved

Class Counsel have spent more than 11,000 hours prosecuting the *Brown* and
*Grasso* actions and will continue to expend more time and expenses before this nearly
decade-old litigation is over. (Irby Decl. at 15; Wallace Decl. at 4-5; Coleman Decl. at 3-
4; Yanchunis Decl. at 5; Lichtman Decl. at 6.)   As summarized in Class Counsel's
declarations, the work performed was necessary and the time spent justified, particularly
given the complex nature of the claims and the abilities of defense counsel. In both
cases, Class Counsel conducted extensive discovery and motion practice, including
numerous rounds of class certification briefing, and dispositive motions; and *Brown* also
involved a trip to the Eleventh Circuit Court of Appeals. The time and labor spent
litigating this case on behalf of the Settlement Class demonstrates the reasonableness of
the fee request.

### (2)    The Novelty and Difficulty of the Questions

---

[5] Two of the factors do not apply in this case and thus can be disregarded, namely the
undesirability of the case and the nature of the professional relationship with the client.
*Johnson* noted that civil rights attorneys who accept unpopular cases may suffer
hardships deserving of a higher fee. *Johnson*, 488 F.2d at 719. Here, Class Counsel did
not suffer any hardship from any purported "undesirability" of this litigation, and Class
Counsel did not have the type of relationship with the named plaintiffs that would have
caused them to offer a volume discount or reduced fee to obtain future business as can be
found in a commercial setting.

"Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome." *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). This case is no different. Class certification in a case of this magnitude is an onerous task, especially considering the abilities of defense counsel and the Eleventh Circuit's reversal in *Brown*. Given the fact that class certification, various *Daubert* motions, and a summary judgment motion were pending at the time the parties reached an agreement, substantial difficulties and risk still exist in this case. Even after reaching an agreement with Electrolux, Class Counsel still had to obtain this Court's approval of the proposed Settlement. The complex facts and legal issues herein, combined with substantial risks, further support the reasonableness of Class Counsel's fee request.

(3)    *The Skill Requisite to Perform the Legal Service Properly*

The Court should also consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3. Proper case management and effective representation in any complex class action, especially one involving a national class and large manufacturer, requires a high level of experience and skill. This case is no different, and as evidenced by the terms of the proposed Settlement, Class Counsel had the necessary experience and skill to negotiate a favorable Settlement, thereby bringing substantial benefits to the Settlement Class. (Irby Decl. 2-4, 10-12; Wallace Decl. at 2-3; Bell Decl. at 1-6; Coleman Decl. at 1-2; Yanchunis Decl. at 1-5; Lichtman Decl. at 1-6.)

(4)    *The Preclusion of Other Employment*

13

Had Class Counsel not taken on the instant litigation, they would have spent significant time on other matters. (Irby Decl. 14-15.) The sheer number of hours spent litigating these cases over the last nine years necessarily precluded Class Counsel from taking on other cases. Accordingly, this factor weighs in favor of the fee request.

(5)    *The Customary Fee*

Consumer class actions like this case are typically handled on a contingent fee basis because virtually no individual possesses a sufficiently large stake in the litigation to justify paying attorneys an hourly rate. *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). Fees in such cases may often range from one-third to 40 percent of the recovery. The requested fee here is well within this range. As addressed below, the requested fee is significantly less than the amount Class Counsel would be entitled to under the standard contract fees. Indeed, Class Counsel entered into agreements with Class Representatives that provide for a one-third contingent fee. The Class Representatives' willingness to enter into such agreements is further evidence of the reasonableness of the requested fee. *See Blanchard v. Bergeron,* 489 U.S. 87 (1989) ("The presence of a pre-existing fee agreement may aid in determining reasonableness"); *Pharr v. Housing Auth.,* 704 F.2d 1216, 1218 (11th Cir. 1983) (such an agreement, although not binding, may be enforced if the fee agreed to is otherwise reasonable).

(6)    *Whether the Fee is Fixed or Contingent*

As noted above, Class Counsel faced a number of hurdles that could have resulted in a smaller recovery or no recovery at all. Class Counsel represented all of the Plaintiffs on contingency, so the only certainty was that there would be no fee without securing a benefit for Class members. Without a recovery, Class Counsel would have received nothing and, in fact, would have suffered a substantial out-of-pocket loss. (Irby Decl. at 14-15; Wallace Decl. at 4; Coleman Decl. at 3; Yanchunis Decl. at 6.) The contingent

nature of this case and substantial risks involved herein support Class Counsel's fee request. *Blum v. Stenson*, 465 U.S. 886, 902 (1984) (Brennan, J. concurring) (stating "the risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee."); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 3d 1330, 1364 (S.D. Fla. 2011) ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."). Such risk is a critical factor in the analysis, *see, e.g. Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 889 F.2d 21 (11th Cir. 1990), and justifies a higher fee:

> It is axiomatic that attorneys who work on a contingent fee must charge a higher fee than those who work on a noncontingent basis. . . . This "higher" fee ... is not a bonus.
>
> From a pure dollars and cents economic view, this higher fee is the appropriate measure of a reasonable fee that is required in the marketplace of services, (1) to induce the attorney to agree to assume the risk that no compensation will be received unless he or she successfully achieves a benefit for the client, and (2) if ultimately successful to compensate for the costs suffered and investment income foregone by delay in payment.

H. Newberg, *Attorney Fee Awards § 1.08 (1986)*. Given that Class Counsel represented the Class solely on a contingent basis, this factor weighs heavily in favor of the reasonableness of the fee requested.

### (7)     *Time Limitations Imposed by the Client or the Circumstances*

Throughout the course of this litigation, Class Counsel worked under considerable time pressure. At times, Class Counsel was required to juggle assignment deadlines in either action, requiring a tremendous amount of coordination and cooperation among the firms involved. (*See* Irby Decl. at 14-15, 17.) Overall, this litigation has spanned nearly a decade and thousands of hours of professional time and sacrifice among the lawyers was involved. Thus, this factor also weighs in favor of reasonableness.

15

*(8)      The Amount Involved and the Results Obtained*

"[O]ne of the primary determinants of the quality of the work performed is the result obtained." *Ressler*, 149 F.R.D. at 655. Here, the amount involved and the results obtained justify the requested fee. The settlement provides for substantial benefits to consumers nationwide, including:

- For Class members who experienced a mold, mildew or Odor Issue within five years of purchase of a Class Washer, a choice between (i) $50.00 cash; (ii) a 20% rebate off the retail purchase of an Electrolux-manufactured appliance; or (iii) reimbursement up to $500.00 for out-of-pocket expenses for washer repairs or replacements, including up to $150.00 for damaged garments or fabrics.

- For Class members who did not experience a mold, mildew or Odor Issue within five years of purchase of a Class Washer, a 5% cash rebate off the retail purchase of an Electrolux-manufactured appliance.

(Settlement Agreement at 6-7, attached as Exhibit 1 to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Incorporated Memorandum of Law in Support (Doc. 199).) As explained in Plaintiffs' preliminary approval brief (Doc. 199 at 10-13), this Settlement provides substantial benefits to Settlement Class members. Class Counsel estimate that 2.88 million Class Washers are included in the Settlement. And numerous Class members will be able to easily obtain relief under the settlement by virtue of being pre-qualified based on Electrolux's service call and warranty records. Moreover, the substantive relief available under the Settlement is modeled largely in part on the relief available to class members in another nationwide front-load washer settlement, *In re: Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, No.: 08-wp-65000 (N.D. Ohio), which was finally approved in September 2016. Accordingly, the results obtained here, despite the substantial risks involved, support a finding that Class Counsel's requested fee is reasonable.

(9)     *The Experience, Reputation, and Ability of the Attorneys*

"To litigate a case such as this requires counsel highly trained in class action matters and in the specialized issues the case presents." *Francisco*, 2008 WL 649124, at *15. Class Counsel have significant experience in consumer class actions and have obtained and helped administer numerous nationwide settlements like this case. (Irby Decl. at 2-4; Wallace Decl. at 2-3; Bell Decl. at 1-6; Coleman Decl. at 1-2; Yanchunis Decl. at 1-6; Lichtman Decl. at 1-6.) Class Counsel's experience, reputation and ability therefore justify the reasonableness of the requested fee. (Irby Decl. at 14-15; Yanchunis Decl. at 5-6.) In evaluating this factor, the Court should also consider the quality of opposing counsel. *Camden I,* 946 F.2d at 772 n. 3. Electrolux was represented by skilled counsel from nationally prominent law firms, requiring equally competent representation for the Class. *See generally Walco Invs. v. Thenen,* 975 F. Supp. 1468, 1472 (S.D. Ga. 1997) ("Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results.").

(10)    *Awards in Similar Cases*

Like the designed settlement structure here, Class Counsel's fee request aligns with the motion for attorneys' fees and costs in *In re: Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, No.: 08-wp-65000 (N.D. Ohio), Doc. # 583-1, wherein class counsel requested fees significantly lower than their total lodestar. Notably, that motion was granted and the settlement approved. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, Doc. 656 at 44 (N.D. Ohio Sep. 23, 2016) (class counsel requested the lodestar method, payment of fees was to be made in addition to amounts paid as settlement class benefits, and the court said "in cases

like this one, where the settlement provides for a claims-made structure that has no upper cap on relief, courts typically use the lodestar method."). In addition to the *Whirlpool* case, there have been other nationwide class settlements against front load washing machine manufacturers involving similar claims. These other settlements were well received by consumers, and, in truth, the relief available to Class members here is superior to the class relief proposed and approved in the other front-load washer settlements. (Irby Decl. at 11-12.) Notably, the attorneys' fees and costs reimbursement sought here are lower than any other fee and costs request sought and granted in the other front-load washer settlements. This is despite the fact the current litigation has been just as heavily litigated, vigorously defended, and is of longer duration than any of these other front-load washer cases. (Irby Decl. at 12 (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, Doc. 656 at 48 (eight (8) year litigation; class counsel requested $14.75 million in attorney fees and costs which was awarded by the court); *In re: LG Front Load Washing Machine Class Action Litig.*, No. 2:08-cv-00051, Doc. 421 at 4 (D.N.J. Oct. 24, 2016) (seven-year litigation; class counsel requested $5.78 million in attorney fees and costs which was awarded by the court); *Tait v. BSH Home Appliances Corp.* No. 8:10-cv-00711, Doc. 41 at 25-26 (C.D. Cal. July 27, 2015) (five-year litigation; class counsel requested $6.5 million in fees and costs which was awarded by the court)).

### *(11)    Other Factors Support the Requested Fee*

The economics of class actions require that Class Counsel receive a fee commensurate with their risk. *See, e.g., Mashburn,* 684 F. Supp. at 687; *Muehler v. Land O'Lakes, Inc.,* 617 F. Supp. 1370, 1375-76 (D. Minn. 1985) ("If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear.") As discussed above,

the risks were particularly daunting in this litigation. Class Counsel undertook major financial risk to fund the litigation costs, which have totaled over $400,000.00, and have expended more than $5.2 million in lodestar. As such, Class Counsel should be "adequately compensated" for their risk.

### C.  The Common Fund Doctrine and Eleventh Circuit Law

Although this motion contemplates an award of attorneys' fees under the lodestar approach, the fee request is also, alternatively, reasonable when considered as a percentage of the benefit conferred on the Settlement Class. Counsel whose work results in a substantial benefit to a class is entitled to a fee under the common benefit doctrine. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.,* 727 F. Supp. 1201, 1202 (N.D. Ill. 1989). The doctrine also ensures those who benefit are not "unjustly enriched." *Van Gemert,* 444 U.S. at 478.

Under *Camden I,* the Court also has discretion to choose the percentage under the common fund approach. *Id.* While awards typically range from 20 percent to 30 percent and some courts view 25 percent as a benchmark to be adjusted based on the circumstances, the Eleventh Circuit has stated: "There is no hard and fast rule . . . because the amount of any fee must be determined upon the facts of each case." 946 F.2d at 774. When selecting the percentage, a court looks to the factors in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir. 1974), and others deemed pertinent. 946 F.2d at 775.

Following *Camden I,* awards in the Eleventh Circuit average around one-third of the benefit. *E.g., Wolff v. Cash 4 Titles,* 2012 WL 5290155 at *5-6 (S.D. Fla. Sept. 26,

2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344 at *6 and n. 6 (N.D. Ga. Oct. 26, 2012) (awarding a one-third fee and listing other similar cases).

Here, the settlement contains a claims-made structure that has no upper cap on relief. This is because the claims-made structure has an indefinite total value and is not usually capable of being characterized as a "common fund" for purposes of a percentage-of-the-fund analysis. *See* Rubenstein, Newberg on Class Actions § 15:56 (5th ed. 2016) (noting that "[c]laims-made settlements do not create a common fund"). To date, the Settlement Administrator, Angeion Group, LLC has mailed Class Notices to 769,436 Class members[6] obtained through Electrolux's records. Assuming very conservatively that each of these Settlement Class members chose the $50.00 cash option—despite being entitled to up $500.00 for out-of-pocket expenses—the overall value of the compensation made available to Settlement Class members would be easily exceed $35 million.  (Wiand Decl. at 7-8.) Class Counsel's fee request, therefore, represents a fraction (roughly 7%) of the available relief and is well within the range of percentage-based awards routinely approved within this circuit. Indeed, this conservative common fund estimate does not take into account (1) the uncapped nature of the claims-made structure here; (2) that numerous Settlement Class members are entitled to much more than $50.00; (3) the additional rebate-based relief available to Class members who did not experience a mold, mildew or odor issue within five years of purchase a class washer,

---

[6] Declaration of Troy Walitsky (hereinafter "Walitsky Decl.") at 2, attached to Notice of Filing Declaration of Compliance With the Class Settlement Notice Program (filed separately but contemporaneously with this submission) as Attachment #1).

and (4) the additional two million Class members that may receive Notice through other means, including publication notice, digital media, settlement website, etc.

## II.    THE EXPENSE REQUEST IS APPROPRIATE

Electrolux has also agreed to pay Class Counsel's reasonable costs and expenses. In class actions, plaintiffs are entitled to reimbursement of reasonable and necessary out-of-pocket expenses that are incurred. *Waters*, 190 F.3d at 1298; *Behrens*, 118 F.R.D. at 549. Class Counsel request $400,000.00 in reasonably and necessarily incurred expenses, and they summarize those expenses in their declarations. (Irby Decl. at 16-17; Wallace Decl. at 4; Coleman Decl. at 3; Yanchunis Decl. at 7; Lichtman Decl. at Ex. B.) These are standard expenses in class action litigation. *See Behrens*, 118 F.R.D. at 548 (reimbursable expenses include travel, depositions, filing fees, postage, telephone, copying, and the like). And because Class Counsel advanced the expenses without guarantee of reimbursement, they had every incentive not to spend unnecessarily. Accordingly, the request should be approved. *See, e.g., Waters,* F.3d at 1298 (class counsel are entitled to recover expenses as well as receive a fee); Fed. R. Civ. P. 23(h).

## III.    THE REQUESTED SERVICE AWARDS SHOULD BE APPROVED

Courts routinely approve service awards to compensate class representatives for their time and efforts on behalf of the class. *E.g., Ingram,* 200 F.R.D. at 695-96; *Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) (approving $5,000.00 service award in a class action settlement with a fund of approximately $300,000); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (affirming approval of settlement and service award of $10,000); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *18 (S.D. Fla. Apr. 13, 2016) (approving $5,000.00 service awards to the named plaintiffs); *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. 2014) (approving $5,000.00

service award to the named plaintiff). Here, the proposed service awards of $4,000.00 in the aggregate to the *Grasso* plaintiffs and $4,000.00 to the *Brown* plaintiff are both modest and justified because each class representative devoted substantial time to this litigation. Indeed, but for their service, other class members would receive nothing. (*See* Irby Decl. at 18.)

## **LOCAL RULE 3.01(g) CERTIFICATION**

Prior to filing this motion, counsel for Plaintiffs conferred with defense counsel regarding the relief requested in this motion.  Although it does not agree with certain arguments and representations contained in Plaintiffs' motion, Defendant Electrolux does not oppose the relief sought by Plaintiffs' motion.

## **CONCLUSION**

For the reasons set forth above, Class Counsel request that the Court approve the request for a fee of $3,300,000.00, reimbursement of $400,000.00 in expenses, and service awards of $4,000.00 in the aggregate to the *Grasso* plaintiffs and $4,000.00 to the *Brown* plaintiff.

Dated: January 16, 2018

Respectfully submitted,

/s/ R. Brent Irby
R. Brent Irby, *pro hac vice*
McCALLUM, HOAGLUND & IRBY, LLP
905 Montgomery Highway, Suite 201
Vestavia Hills, Alabama 35216
Telephone: (205) 824-7767
Facsimile: (205) 824-7768
birby@mhcilaw.com

Edward A. Wallace, *pro hac vice*
Tyler J. Story, *pro hac vice*
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
eaw@wexlerwallace.com
tjs@wexlerwallace.com

Gregory F. Coleman, *pro hac vice*
Adam Edwards, *pro hac vice*
Greg Coleman Law PC
     First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com

John A. Yanchunis
Florida Bar No. 324681
Patrick A. Barthle
Florida Bar No. 99286
Marisa K. Glassman
Florida Bar No. 111991
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 233-5402
jyanchunis@forthepeople.com
pbarthle@forthepeople.com
mglassman@forthepeople.com

*Attorneys for Plaintiffs and the Putative*
    *Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2018, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system which automatically sends email notification of such filing to all attorneys of record.

Richard T. Bernardo
Christopher Cox
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
4 Times Square
New York, New York  10036
Telephone:  (212)735-2603
Email: Christopher.cox@skadden.com
        Richard.bernardo@skadden.com

John H. Beisner
Jessica D. Miller
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
1440 New York Avenue, NW
Washington, DC  20005
Telephone:  (202)371-7000
Facsimile:      (202)661-8301
Email: john.beisner@skadden.com
        jessica.miller@skadden.com

R. Craig Mayfield
BRADLEY, ARANT, BOULT, CUMMINGS, LLP
100 N. Tampa Street
Suite 2200
Tampa, Florida  33602
Telephone:  (813)559-5500
Facsimile:  (813)229-5946
Email:  cmayfield@bradley.com

/s/ R. Brent Irby
COUNSEL